**GREAT AMERICAN CREDIT CORP., Plaintiff,**

v.

**WILMINGTON HOUSING AUTHORITY, a public corporate body of the State of Delaware, Defendant and Third–Party Plaintiff,**

v.

**MARR–TECH, INC., a corporation of the State of New Jersey, Third–Party Defendant.**

**Civ. A. 85–665 CMW.**

United States District Court, D. Delaware.

Feb. 24, 1988.

Joseph W. Benson and Barbara A. Brodo-way, of Joseph W. Benson, P.A., Wilming-ton, Del., for plaintiff.

Clifford B. Hearn, Jr., of Clifford B. Hearn, Jr., P.A., Wilmington, Del., for defendant and third-party plaintiff.

OPINION

CALEB M. WRIGHT, Senior District Judge.

*BACKGROUND*

This dispute originated in an assignment made by Marr–Tech, a building contractor, to Great American Credit Corp. (GACC), a factor, of payments owed to Marr–Tech by the Wilmington Housing Authority (WHA). WHA had contracted with Marr–Tech for construction of various housing units. The specific contract involved here was known as contract 033. As was typical of construction funded by the Department of Housing and Urban Development (HUD), which this was, payment was made to Marr–Tech on a periodic basis to cover work accomplished during that period of time. These payments were made pursuant to "periodic estimates." The contractor, Marr–Tech, would estimate the work done in the pertinent period and amount owing therefor. WHA would then approve the amount of each periodic estimate by evaluating the work that the periodic estimate was to cover. GACC's role in this process, as factor, was to advance funds to Marr–Tech to facilitate progress on the construction. Thus, once WHA had given approval by comparing Marr–Tech's estimates against its own evaluations, GACC could pay out the approved amount of money to Marr–Tech. GACC would then be entitled to receive payment, in turn, from WHA.

The problems that surrounded periodic estimate 10 on contract 033 gave rise to this litigation. GACC paid Marr–Tech on that periodic estimate, but was denied payment when it turned to WHA. It is uncontroverted that Marr–Tech breached the terms of contract 033 by not paying its subcontractors, and was therefore not legitimately entitled to be paid for periodic estimate 10. GACC brought suit against WHA to recover the amount it paid Marr–Tech under periodic estimate 10. WHA's third-party complaint against Marr–Tech to recover the money from it resulted in a default judgment.[1]

This rough outline of the facts is clear. Filling in the outline with the relevant specifics is problematic, however; at trial, the testimony of both sides was less than lucid, and conflicting, if hazy, accounts emerged.

According to president of GACC, Joseph Glass, he was presented with the paperwork for periodic estimate 10 (the "periodic estimate sheet") by Robert Listenbee, president of Marr–Tech. Transcript at A–11. He then called Rita Ferguson, the contract

1. WHA obtained a default judgment against Marr–Tech on June 20, 1986.

administrator at WHA, to ascertain that WHA had, in fact, approved the estimate. *Id.* at A–14. Ferguson told him, he claims, that her signature on the periodic estimate sheet, together with the signature of Peter Fedorkowicz, the construction manager, were sufficient. *Id.* at A–15. Both of these signatures were present on the periodic estimate sheet. PX–4. There was another document attached to the periodic estimate sheet. It was a WHA sign-off sheet, which had spaces for six signatures indicating approval of various aspects of the work, but which contained only three of the signatures. Transcript at A–11; DX–4. Although Glass had never before seen such a document, Transcript at A–11, and wondered about it, he did not mention it to Ferguson, and apparently inquired about it only later. *Id.* at A–76. At that time, either Sirkka Dragonas, an administrative assistant in the Technical Services Department, or Ferguson, told him that the sign-off sheet was an internal document that Glass should never have received. *Id.* at A–74.

After Glass had obtained Ferguson's oral assurance and paid out to Marr–Tech, WHA employees continued to make representations to Glass that led him to believe he was entitled to payment for periodic estimate 10. *See id.* at A–16–17, 23. Therefore, when he attended a progress meeting relating to contract 033 on June 28, 1985, he was shocked to hear that subcontractors continued to have serious complaints against Marr–Tech. *Id.* at A–17. At that progress meeting, Dragonas showed him an envelope that she said contained his check for periodic estimate 10, and told him it needed another signature before being mailed. *Id.* at A–19–20. However, he never received that check in payment for periodic estimate 10, and all of his subsequent efforts to obtain payment were fruitless. *Id.* at A–22. Finally, he filed this lawsuit.

WHA's version is quite different. Ferguson denied ever having given Glass any assurances regarding periodic estimate 10, as did Dragonas. *Id.* at B–83–84 (Ferguson "did not remember" giving such an assurance); B–124 (Dragonas). WHA's procedure for complete approval of a periodic estimate includes the obtaining of all six signatures on the internal sign-off sheet and the reconciling of the figures entered by the contractor on the periodic estimate sheet, both of which processes are handled by Dragonas. *Id.* at B–114–15, 119. The crucial difference between what Glass believed to be the case and the procedure allegedly followed at WHA is that even after all signatures are in place on both the sign-off sheet and the periodic estimate, approval is not complete. A voucher must then be made out by Dragonas that will authorize the finance department to cut the actual check. This voucher requires the signature of James Gaitor, Director of Technical Services at WHA, in order to be valid, and to enable actual payment finally to be made.[2] *Id.* at B–120. No one at WHA other than Gaitor and the Executive Director has the ability to give approval such that payment on a periodic estimate is possible. *Id.* at B–34.

## DISCUSSION

It is clear from the record that Marr–Tech was not entitled to payment for periodic estimate 10 under the terms of its contract with WHA. *See* Defendants' Answering Post–Trial Brief at 12. This is uncontested. *See id.;* Plaintiff's Opening [Post–Trial] Brief at 5. It is also uncontested that GACC, as assignee of Marr–Tech, has no greater right to payment than its assignor.[3] *Id.* Thus, the sole issue in this case is one of estoppel: Did employees of WHA make representations to GACC, through its president, Glass, upon which GACC reasonably relied in paying Marr–Tech under periodic estimate 10, such that WHA is estopped from raising its valid defense against Marr–Tech to shield itself from liability to GACC, Marr–Tech's assignee?

---

**2.** It was not made clear at trial whether this process is mandated for payments to factors, payments directly to contractors, or both.

**3.** This general principle of law stands as the law of the case. *GACC v. WHA,* No. 85–665–CMW at 3 (D.Del. Oct. 29, 1986) [Available on WEST-LAW, 1986 WL 12130] (opinion denying summary judgment motion).

## A. *The Elements of Estoppel*

In Delaware, equitable estoppel arises against a party when that party

by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment ... [citations omitted]. To establish an estoppel, it must appear that the party claiming the estoppel lacked knowledge and the means of knowledge of the truth of the facts in question, that he relied on the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change of position in consequence thereof. [Citation omitted].

*Wilson v. American Ins. Co.,* 209 A.2d 902 (Del.1965). The "conduct" giving rise to estoppel may consist of representations, acts, or, where there exists a duty to speak, silence. *See generally* 28 Am.Jur.2d *Estoppel and Waiver* § 35 (2d ed. 1966). The party claiming estoppel must have acted reasonably in relying on the other party's conduct. *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). Likewise, his lack of knowledge of the facts must be reasonable. *Employers' Liability Assurance Corp. v. Madric,* 183 A.2d 182, 188 (Del.1962).

The facts as presented by GACC would appear to make out the elements of estoppel against WHA. The Court noted in its Opinion denying defendants' motion for summary judgment that

Glass testified to his original phone conversation with Ferguson, in which she told Glass what the procedure for payout should be. Nowhere in that conversation did Ferguson tell Glass about the requirements for the internal sign-off

sheet. Glass Dep. at 7–10. Glass first saw an internal sign-off sheet on May third, when Marr–Tech sought payment for Periodic Estimate No. 10. *Id.* at 12–13. On May third, when Glass asked Ferguson about the significance of the internal sign-off sheet, he was told not to worry about it. *Id.* at 16. On that basis, GACC paid Marr–Tech. *Id.*

If GACC can prove these facts—and that it was reasonable to rely on them in paying Marr–Tech—then they will make out a case for equitable estoppel against WHA.

*GACC v. WHA,* No. 85–665–CMW at 6 (D.Del. Oct. 29, 1986). Thus, the crucial question at trial was whether GACC would prove these allegations by the appropriate standard of proof. As discussed below, the Court answers this question in the negative.

## B. *Burden and Standard of Proof*

Under Delaware law, proof of estoppel must be clear and convincing. *Madric,* 183 A.2d at 188; *cf. Reeder v. Sanford School, Inc.,* 397 A.2d 139, 141 (Del.Super.1979) (promissory estoppel). "An estoppel may not rest upon an inference that is merely one of several possible inferences." *Madric,* 183 A.2d at 188. As the party asserting estoppel, GACC must bear the burden of establishing proof that rises to this standard.[4] *Id.* at 184.

## C. *The Evidence at Trial*

In reviewing the evidence presented at trial and holding it up against the standard to which GACC must establish it to prevail, the Court has focused on three potential ways in which GACC's evidence could meet the "representations" element of estoppel.

---

**4.** Defendants would bar GACC's ability to assert estoppel, or at least, increase the burden it must bear. They state that courts have been reluctant to permit an estoppel to lie against a state government or its agencies. Answering Post-Trial Brief at 13. Since WHA is a state agency, defendant urges the Court to disallow the estoppel sought by GACC. The Court, however, notes a current trend toward a somewhat greater willingness to apply estoppel against the government. *See, e.g., Community Health Services v. Califano,* 698 F.2d 615, 620–21 (3d Cir.1983), *rev'd. sub nom. Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (holding plaintiff had not made out elements required for estoppel). In any case, the question of whether GACC's estoppel argument should fail solely because it is directed against a state agency need not be addressed, as the Court finds that GACC has not produced the quantum of clear and convincing evidence required for it to prevail on estoppel grounds against any party, whether or not governmental.

The Court first looked at whether WHA had in fact made oral representations to Glass relating to estimate 10. The Court also examined whether, in the alternative, the signatures of Ferguson and Fedorkowicz on the periodic estimate sheet could be said to constitute representations by WHA, and additionally, whether WHA had a duty to speak such that its silence would estop it from refusing to pay GACC. Answering each of these in the negative, the Court nonetheless turned to the question of whether, assuming *arguendo* that representations had been made by WHA, reliance upon them by Glass would have been reasonable. The answer to this question is negative as well.

### 1. The Question Whether WHA Made Oral Representations

█ The Court has before it conflicting testimony from Glass and from WHA employees. Glass testified that he was told "that the work was completed and approved, and [the periodic estimate] required the two signatures." Transcript at A–15. Testimony from WHA employees was that they did not tell Glass they held such authority. However, neither did anyone from WHA testify that he or she had informed Glass of who did possess that authority. *See, e.g., id.* at B–83–84 (Ferguson), B–100 (Fedorkowicz), B–124 (Dragonas). The Court has serious reservations about the credibility of the witnesses from WHA.[5] Rita Ferguson, the contact administrator and as such, a person with a great deal of responsibility on the Marr–Tech contract,[6] testified that her signature on the earlier sign-off sheet, DX–4, was authentic, Transcript at B–85–86, yet could offer no explanation as to why she might have signed out of order although that was quite abnormal, *id.* at B–89–91, nor why two sign-off sheets would exist, both with her signature. *Id.* at B–82. Similarly, Sirkka Dragonas, who had custody of the WHA documents neces-

sary for payment of Marr–Tech and was responsible for their proper routing and execution, *id.* at B–114–15, 119, could not explain why signatures had been obtained out of order, nor how the contractor might have obtained copies of both the sign-off sheet and the signed periodical estimate form. *Id.* at B–122–23. These women's lack of awareness of irregularities in a contract with which WHA had been having problems since late Fall of the preceding year, *id.* at B–97, tends to cast doubt on their abilities to recount accurately the events involved in this dispute.

On the other hand, and significantly, the Court's impression of Glass' account is no less troubled. Glass testified that he had been in the factoring business for over 27 years, dealing solely with government-funded contracts. *Id.* at A–5, 38. He had factored many HUD-funded contracts in those years, *id.* at A–38, and contract 033 was such a contract. *Id.* at A–39. Indeed, Glass felt so familiar with the form of such public construction contracts that when the president of Marr–Tech presented to him its contract 033 with WHA, Glass photocopied only the portion of it dealing with the assignment. *Id.* at A–40, 46–47. In spite of all of his experience, Glass claimed to be unaware that failure by Marr–Tech to pay its subcontractors would provide a basis for WHA to withhold payment to Marr–Tech, notwithstanding this type of provision is standard in HUD-funded contracts, *id.* at A–88, and was clearly set forth in paragraph 7 of contract 033. DX–1. *See* Transcript at A–42 (the payments to contractors provisions "sound[ed] familiar" to Glass).

Glass had paid Marr–Tech under previous periodic estimates on April 11 and April 15. *Id.* at A–86–87. There is no evidence that he called anyone at WHA to make sure these payments had been ap-

---

5. In WHA's papers, WHA stresses the monetary stake held by Glass in the outcome of this litigation, implying the existence of an incentive to perjury. Answering Post–Trial Brief at 17. The Court is of the opinion that this argument cuts both ways.

6. For example, it was Ferguson alone who acknowledged the assignment of contract 033 on behalf of WHA. Transcript at A–49. It was also she who communicated with Marr–Tech to correct an error in the assignment. PX–2.

proved. He did call WHA[7] on May 3, however, when periodic estimate 10 was to be paid, and he claimed that he was doing so specifically in order to obtain WHA's assurance that payment had been approved. *Id.* at A–27–28. That such approval was sought, in apparent deviation from his custom, and pertaining to the very payment that would later become problematic, would be fortuitous indeed. Adding to this fortuity the facts that Ferguson, whom Glass claimed to have contacted,[8] denied receiving the call, *id.* at B–78, and that Glass did not mention the attached sign-off sheet, which he had never before seen, *id.* at A–78, and which might otherwise have been seen as providing the impetus for his call, makes the transaction as Glass relates it appear doubtful.

Certainly, Glass' version of the events is plausible. The evidence at trial gave the impression that WHA is an organization characterized by rather inattentive employees and an inability to adhere to its own internal procedures. This impression, however, is not enough to support estoppel against WHA. Although there were flaws in the accounts on both sides, those in Glass' testimony are more significant inasmuch as GACC, as plaintiff, bears the burden of proof. Therefore, the Court cannot say that GACC showed by clear and convincing evidence that representations were made by WHA employees to Glass, upon which he relied in paying Marr–Tech under periodic estimate 10.

2. The Question Whether the Signed Periodic Estimate Sheet Constituted A Sufficient Representation

■ Although it was not specifically raised by GACC, the Court recognizes that there is a question whether the fact that Ferguson's and Fedorkowicz' signatures appeared on the periodic estimate sheet, PX–4, constituted a representation upon which Glass was entitled to rely. Under WHA's procedure for payment approval, only the signature of Gaitor or the Executive Director carried with it the authority necessary for actual payment. Transcript at B–34. However, the only document in this process that Gaitor signs is the voucher for the Finance Department. *Id.* at B–120–21. The periodic estimate sheet, which is the form Glass received, contains no indication that another signature or form is necessary. *See* PX–4. However, GACC presented no evidence or testimony as to whether the periodic estimate sheet was the document generally received by factors, and upon which payment would be made by a factor to a contractor, or whether some other document was required. Likewise, GACC presented no evidence of industry custom that would allow the Court to determine whether Glass' making of an oral contract with Marr-Tech, and his apparently casual preliminary consultation with various persons at WHA concerning payment authorization discharged whatever responsibility GACC had to ascertain and carry out its factoring function in an appropriate fashion. In the absence of such evidence, the Court cannot hold that the signatures on the periodic estimate sheet were themselves a sufficient representation.

3. The Question Whether WHA Had A Duty To Speak Such That Its Silence Constituted A Representation

■ No evidence at trial revealed a duty on the part of WHA to inform Glass of problems with contract 033. GACC cited no case, nor has the Court found one, suggesting WHA had such a duty. Nor did GACC present any reason for the Court to impose this duty on WHA.[9] Silence is not

---

7. Just who Glass was calling at WHA was not clarified by the evidence. Glass' telephone bills were introduced into evidence, and the number 429–6796 was identified by Glass as Ferguson's. PX–9; Transcript at A–28. This was the number he called on May 3. PX–9. However, Ferguson testified that her direct number at that time had been 429–6718. Transcript at B–79. While transfer of calls was possible at WHA,

this number does not appear on any of Glass' telephone bills. Nor was it ever elicited whose number 429–6796 was.

8. *See supra* note 7.

9. Even if WHA were held to have a duty to inform GACC of Marr–Tech's problems, it does not appear that such information would have

a basis for estoppel unless it appears that there was both a clear duty and an opportunity to speak. *Hannigan v. Italo–Petroleum Corp. of Am.,* 181 A. 4, 7–8 (Del. 1935); *Welshire, Inc. v. Harbison,* 88 A.2d 121, 125 (Del.Ch.), *aff'd.,* 91 A.2d 404 (Del. 1952). GACC's statement that "WHA had an opportunity to warn GACC of the contractual problems with Marr–Tech, and with that opportunity came the duty to so warn GACC," Plaintiff's [Post–Trial] Reply Brief at 7, is neither a correct statement of the law nor a convincing argument.

### 4. The Question Whether GACC's Reliance, If Any, Was Reasonable

■ If a party claiming estoppel "had the means by which with reasonable diligence he could acquire ... knowledge [of the true state of affairs] so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment." 3 J. Pomeroy, *Equity Jurisprudence* § 810 at 219 (Symons ed. 1941) (footnote omitted). GACC presentd no evidence indicating that it undertook an appropriately diligent inquiry into either the payment authorization on periodic estimate 10, WHA's internal authorization process in general, or the stability of contract 033.

The Supreme Court discussed the requirement that reliance be reasonable in *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In that case, a non-profit corporation providing health care services recovered reimbursement through the Medicare program for the reasonable cost of services provided to Medicare beneficiaries. The reimbursement was received through a fiscal intermediary, an insurance company, rather than directly from the Secretary of Health and Human Services, who adminis-

tered the program. The corporation had also received a federal grant from a different program, the Comprehensive Employment and Training Act (CETA), which funds were used for salaries and job training expenses. The question arose whether the corporation was entitled to reimbursement from Medicare for the salaries paid to CETA-funded employees providing services to Medicare patients, notwithstanding funding from CETA. The structure of the Medicare program prevented the corporation from asking this question directly of the Secretary, but rather, required it to channel its query through the fiscal intermediary. The corporation did so, and was informed by the fiscal intermediary that Medicare reimbursement was allowed. Based on that information, the corporation submitted those costs, and was reimbursed for them by Medicare, for three years. The corporation was able to use these funds to expand its health care services beyond what it could have done absent this double-funding.

However, the fiscal intermediary eventually made a formal inquiry to the Secretary, which it had failed to do previously, and was advised that this double-funding was, in fact, not permissible. The corporation, now liable for repayment of the funds, argued that the government was estopped from recovering the funds because the corporation had relied on the advice given it by the government's agent.

The Court, avoiding the question of whether estoppel could lie against the federal government, held that the corporation had not made out a convincing estoppel argument because, *inter alia,* its reliance was not reasonable.

First, the Court pointed out "the general rule that those who deal with the Government are expected to know the law and

changed Glass' decision. The correspondence in evidence from various subcontractors to GACC and WHA indicates that WHA had notice subcontractors were not being paid, or were not being paid timely. *See* PX-7-21. That is, the problem of which WHA had notice concerned Marr–Tech's financial situation. Yet Glass testified at trial that contractors who ask GACC to factor their contracts typically have "cash flow

problems." Transcript at A–81–82. Glass knew from the outset that Marr–Tech might "need the money for payroll and material, whatever it may be." *Id.* at A–81. If WHA could have added anything to this knowledge, it is not evident from the record. There would thus be a question about causation even if WHA were held to have disregarded a duty to inform GACC.

may not rely on the conduct of Government agents contrary to law." 467 U.S. at 63, 104 S.Ct. at 2225 (citing, in footnote, *FDIC v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). The Court stated that a participant in the Medicare program had a duty to familiarize itself with the program's legal requirements and with "the nature of and limitations on the role of a fiscal intermediary." *Id.* at 64, 104 S.Ct. at 2226. The corporation did not fulfil its duties because it relied on the policy judgment of the fiscal intermediary which it knew or should have known to be a "mere conduit." *Id.* at 65, 104 S.Ct. at 2226.

GACC's duties are analogous. As a factor experienced at working with government contracts, GACC should have known of the provision that a contractor's failure to pay its subcontractors precludes the contractor's right to payment. *See* DX–1 at para. 7(e). GACC also ought to have known that the internal schemes for payment authorization may differ in various housing authorities, and so obtained information as to WHA's payment process in a definitive form. GACC's reliance on the word of whatever party Glass contacted by dialing the phone number 429–6796, *see supra* note 7, was as unwarranted as reliance on a "mere conduit" was in *Community Health Services.*

Second, in *Community Health Services*, the Court held that "[t]he appropriateness of [the corporation's] reliance [was] further undermined because the advice it received from [the fiscal intermediary] was oral.... The necessity for ensuring that governmental agents stay within the lawful scope of their authority ... argues strongly for the conclusion that an estoppel cannot be erected on the basis of the oral advice that underlay [the corporation's actions]." 467 U.S. at 65, 104 S.Ct. at 2226–27.

This reasoning also can be applied to the situation at bar. There was no evidence that Glass ever attempted to obtain in writing either the confirmation of authorization of payment on periodic estimate 10, or WHA's proper procedure for such authori-

zation, both of which he claimed to have received in oral form.[10] Especially given the uncertain responses at trial of WHA employees questions touching on WHA procedures, *see supra* section C.1, it is not difficult to believe that Glass may have received incorrect information at some point. But his apparently casual attitude toward obtaining that information, and his willingness to rely on oral representations made by persons of unclear authority indicate that he did not discharge his duty diligently to inquire as to the facts surrounding his right to payment from WHA.

Thus, the Court finds that even if representations were made, explicitly or implicitly, by WHA, and GACC relied upon these representations in making payment to Marr–Tech, that reliance does not meet the requirement of reasonableness, and GACC's estoppel argument cannot succeed.

*CONCLUSION*

For the reasons discussed hereinabove, the Court finds that plaintiff, Great American Credit Corporation, has failed to present the quantum of clear and convincing evidence necessary to carry its burden of proof. The Court therefore finds for defendant, the Wilmington Housing Authority.

Judgment shall enter in accordance with this Opinion.

---

**10.** The Court again notes, *see supra* section C.2, the absence of any evidence of industry custom in this regard which might have shown Glass' actions to be more reasonable than they otherwise appear to the Court.