Steven **WEISS, Chapter 7 Trustee, Appellant,**

v.

**BLUE CROSS/BLUE SHIELD OF DELAWARE, Appellee.**

**BAP No. MW 96–057.**

United States Bankruptcy Appellate Panel, First Circuit.

March 26, 1997.

Mark H. Bluver, and Susan E. Zak, Shatz, Schwartz and Fentin, P.C., Springfield, MA, for Appellant.

Joseph H. Reinhardt, Hendel, Collins & Newton, P.C., Springfield, MA, for Appellee.

Before VOTOLATO, LAMOUTTE and HAINES, Bankruptcy Judges.

### MEMORANDUM OF DECISION

HAINES, Bankruptcy Judge.

Steven Weiss, trustee of chapter 7 debtor Head Injury Recovery Center, Inc. (HIRC), appeals from the bankruptcy court's entry of summary judgment dismissing his claims against Blue Cross/Blue Shield of Delaware (Blue Cross). The bankruptcy court concluded that the claims were barred by the limitation provisions contained in the insurance policies under which Weiss sought payment. For the reasons set forth below, we affirm.

### Jurisdiction

The bankruptcy court's entry of summary judgment is a final order from which appeal to the Bankruptcy Appellate Panel lies under 28 U.S.C. § 158(a), (c)(1).[1]

### Standard of Review

■ We review *de novo* the bankruptcy court's legal conclusion to grant summary judgment on the defendant's motion. *FDIC v. Ins. Co. of N. Am.*, 105 F.3d 778, 779 (1st Cir.1997); *see Concrete Equip. Co. v. Fox (In re Vigil Bros. Constr., Inc.)*, 193 B.R. 513, 516 (9th Cir. BAP 1996) (Bankruptcy Appellate Panel reviews trial court's legal conclusion *de novo*); *Citibank (South Dakota) N.A. v. Lee (In re Lee)*, 186 B.R. 695, 697 (9th Cir. BAP 1995) (same).

The [summary judgment] standard is well-rehearsed and familiar. "Summary judgment is appropriate when 'the pleadings,

---

1. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, ("Bankruptcy Code" or "Code"), 11 U.S.C. § 101 *et seq.*

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed.R.Civ.P. 56(c)), *cert. denied,* —— U.S. ——, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996). "In operation, summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour*, 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511) (citations and footnote in *Anderson* omitted). We "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36.

*Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 14 (1st Cir.1996). In summary judgment parlance, a dispute is "genuine" if

> " 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992) (quoting *United States v. One Parcel of Real Property, Etc.*, 960 F.2d 200, 204 (1st Cir.1992)). "A fact is material if it 'carries with it the potential to affect the outcome of the suit under the applicable law.'" *One National Bank v. Antonellis*, 80 F.3d 606, 608 (1st Cir.1996) (quoting *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993)). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Thus, the substantive law defines which facts are material. *Id.* at 248, 106 S.Ct. at 2510.

*Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996).

### Background

### *Facts*

Viewing the summary judgment record in a light most favorable to the appellant, the pertinent facts are as follow:

HIRC operated as a nursing facility in Newark, Delaware, offering rehabilitative services to people with head injuries. On or about May 7, 1992, HIRC admitted Jeff Twilley (Twilley), a Blue Cross/Blue Shield insured, for rehabilitative services following brain surgery.[2] He assigned his rights to policy benefits to HIRC upon admission. HIRC discharged Twilley on April 30, 1993.

The Blue Cross policy included the following clause limiting the time within which actions to recover policy benefits could be instituted: "No legal action may be brought against us for failure to provide benefits unless brought within two years from the date the service in question was rendered."

---

**2.** When Twilley began treatment at HIRC he was insured under a group health insurance contract through his employer. While he was at HIRC his employment was terminated. Twilley obtained ongoing coverage under an individual Blue Cross policy. The policies included identical claims limitation clauses. We will refer to them collectively as "the policy" for the balance of this opinion.

Blue Cross paid $75,600.00 in benefits to HIRC on May 21, 1993. That payment compensated HIRC for services provided to Twilley from May 7, 1992, through October 9, 1992. Blue Cross declined to pay more, asserting that services HIRC provided Twilley after October 9, 1992, were not medically necessary and, therefore, not compensable.

### Procedural History

On February 8, 1993, HIRC filed for chapter 11 protection. The case was converted to chapter 7 on August 18, 1994. Weiss was appointed trustee immediately thereafter.

On April 30, 1996, Weiss filed a four-count adversary complaint against Blue Cross/Blue Shield, seeking $192,046.05, plus interest, as payment for medical services provided Twilley from October 9, 1992, through April 30, 1993.[3]

Blue Cross moved for summary judgment, arguing that Twilley's assignment of insurance contract rights to HIRC was invalid and that, in any event, Weiss's legal action was time-barred by the policy's two-year limitation of actions clause. Blue Cross subsequently abandoned reliance on the anti-assignability clause and sought dismissal solely by its limitations argument. The bankruptcy court dismissed the action as time-barred.

### Discussion

On appeal Weiss argues that Delaware law prohibits Blue Cross from shortening the statutory three-year limitations period within which to bring breach of contract actions,[4] that if such a contractual limitation provision is permissible it cannot operate without specific notice to the insured during the pendency of a claim and, alternatively, that by entering into several tolling agreements during negotiations, Blue Cross is equitably estopped from relying upon the contractual limitations period in defense of his claims. He concedes that the limitations clause is unambiguous and that if enforceable (absent estoppel) it operates to bar the estate's claims.[5]

### 1. *Validity of the Contractual Limitation Clause.*

■ Delaware statute sets a three-year limitations period for contract actions, Del. Code Ann. tit. 10, § 8106, including actions on insurance contracts. *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1287 (Del.1982) (action against automobile insurance carrier sounds in contract, thus timeliness of suit governed by § 8106). Weiss asserts that Delaware law does not permit Blue Cross to shorten the limitations period to two years through a provision in its health insurance policies. The argument overlooks Delaware's longstanding recognition of the general principle that contracting parties, including parties to insurance contracts, may agree to reduce the statutory limitations period that would otherwise apply. *Closser v. Penn Mut. Fire Ins. Co.*, 457 A.2d 1081, 1083 (Del. 1983) ("settled Delaware law ... that a one year limitation on suit [in a casualty] insurance contract is reasonable and binding on an insured"); *Betty Brooks, Inc. v. Ins. Placement Facility of Delaware*, 456 A.2d 1226, 1228 (Del.1983) (one year limitation in casualty insurance policy valid); *Wesselman v. Travelers Indem. Co.*, 345 A.2d 423, 424 (Del.1975) ("In the absence of an express statutory prohibition, the provision in the instant insurance policy, limiting the time in which suit may be brought thereon to a period less than that set by the Statute of

---

**3.** Because services were rendered to Twilley while he was insured under two distinct contracts, counts I and II alleged breach of, respectively, Twilley's group health insurance contract and individual health insurance contract. Counts III and IV alleged breach of an implied covenant of good faith and fair dealing in each contract.

**4.** As the parties agree that Delaware law governs their dispute, we will apply it. *See Carey v. Bahama Cruise Lines,* 864 F.2d 201, 206 (1st Cir.1988) (given "reasonable relation" between dispute and forum whose law is invoked by parties, court of appeals may "forego independent analysis" of choice-of-law issue); *see also One Nat'l Bank v. Antonellis,* 80 F.3d 606, 608 (1st Cir.1996) (in diversity case court should accept concession of parties regarding applicable state law).

**5.** The parties agree that because Weiss filed the instant complaint more than two years after entry of the order for relief, the time extension provisions of § 108(a) do not operate to render the lawsuit timely.

Limitations, is not deemed to be in conflict with the Statute and is controlling."); *Ottendorfer v. Aetna Ins. Co.*, 231 A.2d 263 (Del. 1967); *see generally* George J. Couch et al., *Couch on Insurance* § 75:71 (2d rev. ed. 1983) (in the absence of legislative prohibition, insurance policy terms reducing claims period from statutory periods otherwise applicable are valid).

Weiss urges us to consider Del.Code Ann. tit. 18, § 3914, which states:

> [a]n insurer shall be required during the pendency of any claim received pursuant to a casualty insurance policy to give prompt and timely written notice to claimant informing him of the applicable state statute of limitations regarding action for his damages.

He asserts that the absence of any similar provision in the Delaware statutes relating to health insurance policies militates in favor of our finding that Delaware's legislature did not consider a shortened limitations period in health insurance contracts good public policy. Alternatively, he argues that if a claims limitation clause in a health insurance policy is permissible, the carrier must, by analogy to § 3914, provide specific notice of the limitations period during the pendency of the claim.

■ Neither argument carries the day. First, § 3914 does nothing to upset settled Delaware law permitting contracting parties to set claims limitations periods. It does not determine that contractual limitations periods are impermissible (or even disfavored). It merely (arguably) requires notice to an insured of the applicable limitations period.[6] Second, the express terms of § 3914 limit its force to "casualty insurance" policies. The policy before us is not such a policy.[7] Moreover, even if § 3914 could be read to extend its procedural notification requirement to policies other than those providing casualty insurance, Blue Cross's health insurance policies would be statutorily excepted from its requirements. Blue Cross is a Delaware Health Service Corporation, registered by the Delaware Department of Insurance. Del.Code Ann. tit. 18, § 6304 (requiring certificate of authority be obtained from Commissioner of Insurance Department before corporation may operate as "health service corporation"). As such, it is regulated exclusively by Del.Code Ann. tit. 18, §§ 6301–6309.[8] Section 6309 enumerates other chapters of Title 18 (Delaware's general insurance code) applicable to health service corporations. Chapter 39 (in which § 3914 appears) is not on the list.[9]

Finally, as a federal court applying Delaware law, we must exercise "considerable

---

**6.** Section 3914, by its own terms, requires only notice of the applicable *state statute* of limitations to an insured by a provider of a casualty insurance policy. Although we take no position, the parties at oral argument conceded that the statute would by analogy require notice (by a casualty insurer) of whatever limitations period was applicable, so that if there were a shortened period within an insured's contract the insurer would be required to so inform the insured.

**7.** The appellant does not attempt to characterize the Blue Cross policy issued to Twilley as a "casualty" policy. Delaware classifies as "casualty insurance" policies providing coverage for perils such as "loss or damage by burglary, theft, larceny, robbery, forgery, fraud, vandalism, malicious mischief...." Del.Code Ann. tit. 18, § 906(a)(4). *See generally* Del.Code Ann. tit. 18, ch. 39 (§§ 3902–3915) (Casualty Insurance Contracts).

**8.** Del.Code Ann. tit. 18, § 6301 states:
Health service corporations now or hereafter incorporated in this State shall be governed by

this chapter, shall be exempt from all other provisions of this title, except as herein expressly provided, and no insurance law hereafter enacted shall be deemed to apply to such corporations unless they be specifically referred to therein.

**9.** Del.Code Ann. tit. 18, § 6309 states:
[Health service] corporations shall be subject to this chapter and to the following chapters of this title, to the extent applicable and not in conflict with the express provisions of this chapter:
(1) Chapter 1 (General Definitions and Provisions).
(2) Chapter 3 (The Insurance Commissioner).
(3) Chapter 23 (Unfair Practices in the Insurance Business).
(4) Chapter 25 (Rates and Rating Organizations).
(5) Chapter 59 (Rehabilitation and Liquidation).
(6) Chapter 34 (Medicare Supplement Insurance Minimum Standards).
(7) Chapter 36 (Individual Health Insurance Minimum Standards).

caution when considering the adoption of a new application" of state law. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 192 (1st Cir.1996); *see Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1186–87 (1st Cir.1996) (refusing to extend state contract law principles beyond the "well-marked boundaries" set by state's supreme court); *Markham v. Fay*, 74 F.3d 1347, 1356 (1st Cir.1996) (recognizing principle that federal courts should "take care not to extend state law beyond its well-marked boundaries in an area ... that is quintessentially the province of state courts"). Thus, we must decline Weiss's invitation to step beyond the "well-marked boundaries" of Delaware law and declare invalid that which neither the Delaware Legislature nor the Delaware Supreme Court have proscribed. Within the boundaries, his argument cannot prevail.

### 2. *Estoppel*

■ Weiss also argues that Blue Cross is estopped from asserting its contractual limitations defense due to the existence of three "tolling agreements" entered into between the parties during the course of negotiations. Blue Cross responds, first, that the tolling agreements cannot be considered because they were not properly before the bankruptcy court. It also points out that the agreements' terms could not have raised a genuine issue for trial because the agreements were made *more* than two years after services were last rendered to Twilley, and because Weiss did not file suit until four months *after* the last agreement expired.

Weiss presented unsworn, uncertified copies of the agreements, unaccompanied by affidavit, to the bankruptcy judge to support his estoppel argument in the course of the summary judgment hearing. Although the court rejected the argument on the merits, it expressed concern as to whether the agreements were properly before it.[10] We share that concern. Rule 56(e) of the Federal Rules of Civil Procedure provides, in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Cf. LaRou v. Ridlon*, 98 F.3d 659, 663 (1st Cir.1996) (statement in affidavit inadmissible hearsay so could not be considered competent record evidence); *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 347 (1st Cir.1995) (same). However, because the agreements were presented to the court without objection we will address the merits of Weiss's argument.

■ In Delaware, equitable estoppel arises against a party when that party

by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment ... [citations omitted]. To establish an estoppel, it must appear that the party claiming the estoppel lacked knowledge and the means of knowledge of the truth of the facts in question, that he relied on the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change of position in consequence thereof. [Citation omitted].

*Great Am. Credit Corp. v. Wilmington Hous. Auth.*, 680 F.Supp. 131, 134 (D.Del.1988) (quoting *Wilson v. Am. Ins. Co.*, 58 Del. 394, 209 A.2d 902 (1965)). The "conduct" giving rise to estoppel may consist of representa-

---

**10.** *See* Tr. of Hearing on Motion by Defendant for Summary Judgment, at 50 ("Now we come to the tolling agreements, and even taking those without affidavits, and, frankly, I don't think I should take them without affidavits....").

tions, acts, or, where there exists a duty to speak, silence. *Id.* (citation omitted). The party claiming estoppel must have acted reasonably in reliance on the other party's conduct, and his lack of knowledge of the true facts must be reasonable. *Id.*

Here the parties entered into three separate agreements calling for a tolling of "any applicable statute of limitations, or statutes of repose." [11] The bankruptcy court determined that the agreements, by themselves, with no affidavits recounting representations that Blue Cross made, evidenced nothing more than negotiations, and that an history of negotiation, by itself, would not estop Blue Cross from relying on the limitations period set forth in its policies.[12] Recognizing that the two year limitations period had run before the date of the first agreement and that the extensions the agreements provided had expired before Weiss filed suit, the court determined that the agreements provided no evidentiary support for Weiss's estoppel claim. We agree.[13]

### Conclusion

For the reasons set forth above, we **affirm** the bankruptcy court's order of summary judgment for Blue Cross.

---

11. The three agreements were intended to toll any applicable statute of limitations from September 1, 1995, through December 31, 1995.

12. By their terms, the tolling agreements were made "to avoid possible, but uncertain statute of limitations problems...." However, we note that each of the agreements also preserved the parties' rights to assert any and all available claims and defenses. ("This agreement shall not constitute an admission by either party that any valid claims or defenses exist.")

13. We need go no further in discussing Weiss's argument that Blue cross is estopped from asserting the claims limitation period established by its policy. The balance of his argument is pinned on the course and content of negotiations between the parties. At summary judgment he provided no evidence about the nature of those negotiations or any representations that might have been made in their course. Thus, summary judgment was proper.