In re Alma JOHNSON and Robert L. Johnson, Debtors.

Domestic Bank, Successor to Domestic Loan and Investment Bank, Plaintiff,

v.

Alma Johnson, Robert L. Johnson Defendants and Third–Party, Plaintiffs,

v.

Interstate Contractors, Inc., Third Party, Defendant.

Bankruptcy No. 97–14695.
Adversary No. 97–1197.

United States Bankruptcy Court, D. Rhode Island.

Sept. 8, 1999.

Christopher Lefebvre, Pawtucket, RI, for Debtors, Defendants and Third–Party Plaintiffs.

Mark B. Morse, Providence, RI, for Third–Party Defendant.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on cross Motions for Summary Judgment on Alma and Robert Johnson's Third–Party Complaint against Interstate Contractors, Inc., alleging violations of the Rhode Island Door–to–Door Sales Act, §§ 6–28–1, *et seq.* ("Act"). There are no genuine issues of material fact in dispute and the matter is ripe for summary judgment. For the reasons discussed below, the Third–Party Plaintiffs' Motion for Summary Judgment is GRANTED and the Third–Party Defendant's Cross Motion for Summary Judgment is DENIED. More specifically, based upon the evidence presented and R.I. Gen. Laws §§ 6–28–1, *et seq.*, we find that: (1) Interstate Contractors, Inc. violated the Rhode Island Door–to–Door Sales Act; and (2) the Johnsons are awarded double damages in the amount of $24,800, pursuant to R.I. Gen. Laws § 6–28–4(d).

## BACKGROUND

On July 2, 1995, an Interstate representative appeared at the Johnson residence at 65 Stanford Street, Providence, Rhode Island, offering home improvement services. As part of his sales promotion the Interstate agent told the Johnsons that funds were available for first-time homeowners to improve their property, that he did all of his business with Domestic Loan & Investment Bank through his friend who worked there, and that "he would take care of everything." As a result of this

solicitation the Johnsons agreed to have their porch, porch floors, and railings repaired and/or replaced for a total price of $14,900, and they signed a home improvement contract to that effect. Interstate immediately commenced work, even before the Johnsons had acquired funds to pay for the job. While the work was in progress the Johnsons went to the offices of Domestic to finance the project, and executed a mortgage and promissory note. With the application approved, the loan was processed and the Johnsons paid Interstate $12,400 from the proceeds. The balance of $2,500 was due when the work was completed (the Johnsons contend that they paid this, but Interstate alleges that the check never cleared). For purposes of this decision, the Johnsons agree that a balance of $2,500 remains. (Defendants' Objection to Motion for Summary Judgment, p. 4, ¶ 1).

On November 12, 1997, the Johnsons filed a petition under Chapter 13 to stop a scheduled foreclosure by the first mortgagee, and on August 19, 1998, the case was converted to Chapter 7. In their complaint the Johnsons alleged that Domestic Bank violated the Federal Truth In Lending Act, 15 U.S.C. § 1635, *et seq.*, and those parties have settled that dispute. On March 26, 1998, the Johnsons amended the complaint to include the instant third-party related action against Interstate Contractors, Inc.

It is undisputed that the contract in question fails to include certain disclosures required by Rhode Island's Door–to–Door Sales Act, so-called, R.I. Gen. Laws § 6–28–1. Specifically, Interstate failed to: (1) use minimum ten (10) point bold font in the "Notice to Buyer" language as required by R.I. Gen. Laws § 6–28–4(a); (2) use the required language in the "Notice to Buyer" in accordance with R.I. Gen. Laws § 6–28–4(a); [1] and (3) provide the proper "Notice of Cancellation" as required by R.I. Gen. Laws § 6–28–4(c). [2]

On January 12, 1998, the Johnsons, through their attorney, sent a demand letter to Interstate rescinding and canceling the home improvement contract, and requesting a full refund. Interstate did not respond to this notice. Both parties now request summary judgment.

1. The specific notice states:

> Notice to buyer: (1) Do not sign this agreement if any of the spaces intended for the agreed terms to the extent of then available information are left blank. (2) You are entitled to a copy of this agreement at the time you sign it. (3) You may at any time pay off the full unpaid balance due under this agreement, and in so doing you may be entitled to receive a partial rebate of the finance and insurance charges. (4) The seller has no right to enter unlawfully your premises or commit any breach of the peace to repossess goods purchased under this agreement. (5) You may cancel this agreement if it has not been signed at the main office or a branch office of the seller, provided you notify the seller at his main office or branch office shown in the agreement by registered or certified mail, which shall be posted not later than midnight of the third calendar day after the day on which the buyer signs the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. See the attached notice of cancellation form for an explanation of buyer's rights.

R.I. Gen. Laws § 6–28–4(a). The Interstate contract is missing the words "Notice to buyer," all the information contained in subparagraph 1, and the entire last sentence of the required notice.

2. This section states:

> Additionally, the seller shall at the time of the sale give notice to the buyer of all the buyer's rights which substantially complies with this chapter. The notice must: (i) Appear in the agreement under the conspicuous caption: "Notice of Cancellation," and (ii) read as follows:
> ...(date of transaction) You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date. If you cancel, your cancellation notice must state that you do not wish to be bound by the agreement and mailed by registered or certified mail not later than midnight three (3) days following the buyer's signing the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. All cancellations must be mailed to:
> (insert name and address of the seller).
> R.I. Gen. Laws § 6–28–4(c).

## DISCUSSION

In considering requests for summary judgment, courts in this Circuit use the following guidelines:

> [S]ummary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obligated to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality ... that support his position.... When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant.... This means, of course, that the summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.

*Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir.1994) (citations omitted) (Footnotes omitted).

"In operation, summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Weiss v. Blue Cross/Blue Shield*, 206 B.R. 622, 624 (1st Cir. BAP 1997) (quoting *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment properly issues. *See* 206 B.R. at 624. When the plaintiff properly supports its motion for summary judgment, the burden shifts to the defendant, which "may not rest on mere allegations or denials of...[its] pleading, but must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the Johnsons have adequately supported their Motion for Summary Judgment, and Interstate has failed to present, through affidavit or evidence, a genuine issue for a trial.

 In resolving this dispute we must apply, and interpret if necessary, the provisions of the Rhode Island Door–to–Door Sales Act, R.I. Gen. Laws §§ 6–28–1, *et seq.*, and in so doing we are guided by the following principles:

> " 'the task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning.' " *In re Juraj J. Bajgar*, 104 F.3d 495, 497 (1st Cir.1997), *quoting Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 706 (1st Cir. 1992). Wherever possible, statutes should be construed in a commonsense manner, avoiding absurd or counterintuitive results.

*Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1237 (1st Cir.1997).

 A threshold issue here is whether the Rhode Island Door–to–Door Sales Act applies to this transaction, and without difficulty, we conclude that it does. A door-to-door sale is defined by the Act as:

> a sale, lease, or rental of consumer goods or services with a purchase price of $25.00 or more, whether under single or multiple contracts, in which the seller or his or her representative personally solicits the sale, including those in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is made at a home other than that of the person soliciting the same, or at a place other than the regular place of business of the seller.

R.I. Gen. Laws § 6–28–2(a). Interstate's representative went to the Johnsons' home to solicit the sale of home improvement services, and the contract for the services was signed in the Johnsons' home. These facts place the transaction squarely within the Act, triggering all of its protections.

■■ Under the statute the buyer may cancel a door-to-door sales transaction within three days of signing the agreement. *See* R.I. Gen. Laws § 6–28–3. This time period affords consumers a short period for reflection to guard against high pressure door-to-door sales tactics. *See State v. Stereo Importers, Inc.,* 114 Misc.2d 864, 452 N.Y.S.2d 835, 837 (N.Y.Sup.Ct.1982) (construing a door-to-door sales act similar to that of Rhode Island). If the buyer exercises his/her right to cancel, the Seller has twenty days to return any payments made by the buyer under the contract, and the buyer may retain any goods tendered under the contract until the seller complies with its obligation to refund the payments made. *See* R.I. Gen. Laws § 6–28–5.

■ The Interstate contract violates the Act because it fails to include certain disclosures mandated by Section 6–28–4, and the Act clearly defines the consequences of a seller's failure to comply strictly with its terms. First and foremost, the agreement is a nullity because under the Act "[n]o agreement of the buyer in a door-to-door sale shall be effective unless it is signed and dated by the buyer and unless it contains the [mandated disclosures] . . . in ten-point bold face type or larger directly above the space reserved in the agreement for the signature of the buyer." R.I. Gen. Laws § 6–28–4(a).

■ Additionally, the Act provides:

Whenever the agreement fails to conform to the provisions of this section and the buyer or his or her agent has notified the seller of his or her intent to cancel the agreement by registered mail, return receipt requested, the seller shall within twenty (20) days return any deposit made by the buyer. Failure to return any deposit shall enable the buyer to recover from the seller double damages in any subsequent legal proceeding.

R.I. Gen. Laws § 6–28–4(d). We view the reference to cancellation in this section of the Act as *separate and in addition to* the buyer's right to cancel the agreement within three business days under Section 6–28–3. The latter provision applies when the agreement conforms to the provisions of the Act, and where the buyer unilaterally decides to back out of the contract, whereas cancellation under Section 6–28–4(d) applies when the agreement does not meet the requirements of the Act. The buyer's right to cancel under Section 6–28–4(d) is not time restricted, and the seller's failure to refund payments within twenty days of a § 6–28–4(d) notice of cancellation entitles the buyer to double damages. While we recognize the harsh result of noncompliance, the legislature, as it does with many consumer protection statutes, has put muscle into this remedial legislation, to discourage unfair door-to-door sales practices, and to create a more level playing field between consumers and sellers. *See, e.g., Murphy v. McNamara,* 36 Conn.Supp. 183, 416 A.2d 170, 174–75 (1979)(describing the court's role in enforcing the provisions of the Connecticut Unfair Trade Practices Act).

On January 12, 1998, the Johnsons, through their attorney, notified Interstate via certified, return receipt mail, of their intention to cancel the contract pursuant to Section 6–28–4(d). Interstate, which did not respond, now mistakenly relies on Section 6–28–3, arguing that the Johnsons are well beyond the three-day cancellation period and that they therefore waived all other rights under the contract. Interstate expresses disbelief that the Johnsons could possibly have any recourse, three years after the contract was completed, but this misplaced impression does not change the inescapable answer which lies in Section 6–28–4, described *supra.* Upon receipt of the Johnsons' timely notice to cancel, Interstate had twenty days within which to return the payments the Johnsons made under the contact. *See* R.I. Gen. Laws § 6–28–4(d). In addition, within twenty days after the cancellation and if demanded by Interstate, the Johnsons were obligated to tender to Interstate, at

their home, any goods delivered under the contract. *See* R.I. Gen. Laws § 6–28–7(a).[3] Interstate never made such a demand and under the Act, twenty days after the cancellation, the goods, by operation of law, became the property of the Johnsons. *Id.*

Neither does Interstate's laches argument have any application here. "The equitable doctrine of laches allows a court to dismiss a claim 'where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party.'" *Iglesias v. Mutual Life Ins. Co.*, 156 F.3d 237, 243 (1st Cir.1998) (quoting *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir.1989)). The Johnsons were not even provided with the statutorily mandated "Notice of Cancellation" informing them of their right to cancel the contract. To apply the doctrine of laches in this situation would require the buyer in a door-to-door sales transaction to exercise a right they do not even know exists. In addressing a similar situation under Maryland's version of the Act, the court stated:

> Nevertheless, it cannot be gainsaid that the Legislature did intend for the cooling off period, i.e., the buyer's right to cancel, to have meaning. Why else would the Legislature painstakingly provide not only for the buyer's notification but, in addition, the precise form of that notice? Undoubtedly, the Legislature recognized that, without knowledge of the right to cancel, a consumer will not be able to meaningfully exercise it. Until the buyer is told that he or she may cancel, or receives information from an-

other source, the Legislature logically could assume that the right to cancel that it was giving the buyer was nothing more than an empty promise. We do not ascribe to the Legislature an intention that over looks reality.

*Crystal v. West & Callahan, Inc.*, 328 Md. 318, 614 A.2d 560, 573 (1992). If the Johnsons had not been advised by their attorney of the existence of the notice provision, they would still be unaware of it, as well as the remedies available to them, and to adopt Interstate's argument, the rights granted to consumers under the Act would be meaningless.

Based upon the undisputed record, and applying the Act as it is plainly written, Interstate's failure to return the deposit within twenty days of receiving the notice of cancellation entitles the Johnsons to double damages under the Act, and the Johnsons' failure to rescind within three days is irrelevant. "Failure to return any deposit *shall* enable the buyer to recover from the seller double damages in any subsequent legal proceeding." R.I. Gen. Laws § 6–28–4(d)(emphasis added). The Johnsons paid $12,400 to Interstate under the contract, therefore judgment should enter against Interstate for $24,800.[4] The Johnsons are also deemed to be the owners of the improvements, free and clear of any claims of Interstate. *See* R.I. Gen. Laws § 6–28–7(a).

*CONCLUSION*

Based upon the foregoing, the Johnsons' Motion for Summary Judgment is GRANTED. Interstate's Cross Motion for Summary Judgment is DENIED, and

---

**3.** This Section states:

(a) Except as provided in § 6–28–5(d), within twenty (20) days after a door-to-door sale has been cancelled by the buyer, upon demand the buyer shall tender to the seller any goods delivered by the seller pursuant to the sale, but the buyer is not obligated to tender at any place other than his or her own address. Buyer's compliance with the seller's instructions regarding the return shipment of the goods shall be at the seller's expense and risk. If the seller fails

without interference from the buyer to take possession of the goods within twenty (20) days after cancellation, the goods shall become the property of the buyer without obligation to pay for them.
R.I. Gen. Laws § 6–28–7(a).

**4.** Once a violation of § 6–28–4(d) has been established, we assume that the imposition of double damages is mandatory and not discretionary.

Judgment for the Johnsons should enter in the amount of $24,800.

Enter judgment consistent with this opinion.