AMERICAN UNION FINANCIAL CORPORATION, Plaintiff-Appellee, *v.* UNIVERSITY NATIONAL BANK OF PEORIA, Defendant-Appellant.

Third District   No. 75-419

Opinion filed November 30, 1976.—Rehearing denied December 29, 1976.

Kavanagh, Scully, Sudow, White & Frederick, of Peoria (William V. Altenberger, of counsel), for appellant.

Sutkowski & Washkuhn Associates, of Peoria (Edward F. Sutkowski, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

American Union Financial Corporation, plaintiff, brought suit against the defendant University National Bank of Peoria to recover $10,526 deposited by American in a passbook savings account. The Bank claimed that American's account had been pledged by Larry Hartley, American's president, to secure a bank loan to Prophecy Investors Corporation, and, when Prophecy defaulted on the loan, the Bank had applied the savings account to Prophecy's debt. American denied that a binding pledge was made. Following a bench trial, judgment was entered in favor of American for $10,526, and the Bank appeals.

The determinative issue is whether American clothed Hartley with apparent authority to pledge its savings account to secure a loan to Prophecy, and thus is estopped to deny his actual authority. An account of the circumstances surrounding the disputed transaction is therefore necessary.

Prophecy, an insurance agency, was incorporated in 1968 with Hartley as president and his wife, Mary Jane Hartley, as secretary-treasurer. In 1972, Hartley organized American, and he and Mrs. Hartley were elected its president and secretary-treasurer, respectively. Several shareholder and directors were common to both corporations, but not all. Hartley originally intended to develop American as an insurance company for which Prophecy would act as broker, but those plans did not materialize, and American instead became involved in real estate development. Hartley managed the business operations of both corporations, and Mrs. Hartley kept the books and records and supervised the office which both corporations shared. After American was formed, Hartley devoted most of his time to promoting the sale of American stock which was sold through Prophecy.

From 1968 through 1972, defendant Bank made 23 loans to Prophecy and to Mr. and Mrs. Hartley individually. William Lyman, president of the Bank, was told by Hartley that he intended to merge the two corporations eventually, and Lyman was familiar with the business operations of both companies.

On December 5, 1972, Mr. and Mrs. Hartley met with Lyman to arrange a $10,000 loan to Prophecy. Lyman asked for collateral to secure the loan since Prophecy had fallen behind on other debts, and Hartley agreed to pledge American's savings account, saying that Prophecy would use the money to promote the sale of American's stock. Mr. and Mrs. Hartley signed two notes totaling $10,000 in their capacity as officers of Prophecy, and Mrs. Hartley affixed the corporate seal. Each note recited that the American savings account had been deposited with the Bank as collateral for the debt. As officers of American, Mr. and Mrs.

Hartley also executed a "Consent to Pledge of Collateral," which authorized Prophecy to pledge American's savings account as security for Prophecy's debts. The Hartleys did not surrender the passbook, but the Bank marked the savings account ledger to show a $10,000 "hold" on American's account.

Hartley resigned as president of American in December, 1973, apparently by request of the Board of Directors, and Robert Kreutz, the new president, discovered the pledge of the savings account shortly thereafter. Prophecy was then in default on its $10,000 debt, and on December 31, 1973, the Bank applied the savings account to the unpaid debt.

During the trial of this cause, defendant Bank introduced into evidence the notes, the "Consent to Pledge" signed by the Hartleys, and a resolution of the Board of Directors of American which authorized any two of the three corporate officers to sign checks and negotiable instruments, to borrow money, and "to pledge or hypothecate as security to said Bank any of the * * * accounts, securities and other property of the Corporation * * *." This resolution was certified by Mrs. Hartley as secretary of American and so was another document listing the corporate officers. The corporate seal was affixed to both documents.

Kreutz testified that this resolution was never adopted by the Board of Directors of American, that neither the Board nor the Executive Committee authorized Hartley to pledge American's savings account, and neither group was informed of the transaction by Hartley. The minutes of the first meeting of American's Board of Directors on June 11, 1972, include a resolution authorizing Mr. and Mrs. Hartley and the vice-president to draw checks or drafts on the funds of the corporation. Another resolution adopted at the same meeting authorized an advance of $10,000 to Prophecy against the commission to be earned by Prophecy during the public offering of American stock. However, the funds pledged in December, 1972 represented an additional loan to Prophecy.

The Bank contends that American clothed Hartley with apparent authority to pledge its savings account as security for Prophecy's loan and that American was bound by that pledge as a matter of law. American, on the other hand, argues that the Bank relied on representations of authority made by Hartley himself, and that the corporation did nothing to create apparent authority in Hartley. ·

■■ The general principles governing apparent authority are succinctly stated in 19 Am. Jur. 2d *Corporations* §1164 (1965), as follows:

> "The fundamental and well-settled rule is that when, in the usual course of the business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or

manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he is doing an act or making a contract within the scope of his authority, the corporation is bound thereby, even though such officer or agent has not the actual authority from the corporation to do such an act or make such a contract. This authority is known as apparent or ostensible authority. * * * Stating the rule in terms of estoppel, a corporation which, by its voluntary act, places an officer or agent in such a position or situation that persons of ordinary prudence, conversant with business usages and the nature of the particular business, are justified in assuming that he has authority to perform the act in question and deal with him upon that assumption, is estopped as against such persons from denying the officer's or agent's authority."

■■ A contract of guaranty which amounts to a gratuitous accommodation is generally considered an unusual and extraordinary transaction, not within the scope of the corporation's business, and a third person dealing with an officer in such a transaction must use reasonable diligence to ascertain whether the officer has actual authority. (*Dobson v. More* (1896), 164 Ill. 110, 45 N.E. 243.) However, where the guaranty contract does pertain to corporate affairs, it will be presumed to have been executed with authority. *Lloyd & Co. v. Matthews* (1906), 223 Ill. 477, 79 N.E. 172.

In a case with striking similarities to the case before us, *In re Drive-In Development Corp.* (7th Cir. 1966), 371 F.2d 215, involving Illinois corporations, the corporate manager signed a guaranty of an obligation of a related corporation to a bank. The bank asked for and received a certified copy of a resolution of the board of directors which purported to authorize the manager to sign the guaranty. The resolution was certified, with the corporate seal affixed, by the corporation's secretary, but in fact no such resolution appeared in the minutes of the board of directors. The court held that the corporation was estopped to deny the manager's authority to sign the guaranty in the absence of actual or constructive knowledge on the part of the bank that the representation of authority was untrue. The court noted that it was within the authority of the secretary to certify such a resolution, and that representations made by a corporate agent in the course of a transaction which are within the scope of his authority are binding on the corporation. The court also stated:

"Furthermore, the realities of modern corporate business practices do not contemplate that those who deal with officers or agents acting for a corporation should be required to go behind the representations of those who have authority to speak for the

corporation and who verify the authority of those who presume to act for the corporation." 371 F.2d 215, 220.

■■ We believe the principles applied in the *Drive-In Development Corp.* case are equally applicable in the case at bar. Here the Bank relied upon the apparent authority of Hartley to manage the financial affairs of American, and the purported resolution certified by American's secretary was one of the indicia of Hartley's apparent authority to pledge American's funds. The Bank was under no obligation to go behind the representation of the secretary as to Hartley's authority. (See *Diversification Consultants, Inc. v. Candy-Gram, Inc.* (1st Dist. 1970), 130 Ill. App. 2d 1029, 264 N.E.2d 788; *Freeport Journal-Standard Publishing Co. v. Ziv Co.* (2d Dist. 1952), 345 Ill. App. 337, 103 N.E.2d 153; *Alton Manufacturing Co. v. Garrett Biblical Institute* (1910), 243 Ill. 298, 90 N.E. 704.) To hold otherwise would require us to ignore modern corporate business practices of closely held integrated businesses.

American also contends that the Bank failed to prove that the savings account was pledged because the "Consent to Pledge" form executed by Hartley was not itself an actual assignment and also because the passbook was retained by the corporation. Neither argument is persuasive.

The consent form purported to give Prophecy the right to pledge American's account as security for a loan to Prophecy. The notes signed by Hartley on behalf of Prophecy listed the account as collateral to secure the loan. Thus the pledge was accomplished.

■■ The Bank's president, Lyman, testified that the Bank was able to protect its security interest in the account by placing a "hold" notice on its ledger without surrender of the passbook. Furthermore, mere possession of a passbook is not alone sufficient to establish the right to withdraw the funds shown deposited in the book. (10 Am. Jur. 2d *Banks* §349 (1963); *cf. Bugdoian v. Union Trust Co.* (4th Dist. 1949), 337 Ill. App. 405, 86 N.E.2d 253.) In the case at bar, the pledgee is the Bank where the pledged savings account funds are deposited, and under the circumstances, the pledgor was not required to surrender the passbook in order to accomplish the pledge.

American also insists the court should take into consideration the fact that the Bank failed to show this account as pledged when responding to an inquiry by American's auditors on February 1, 1973. This evidence was not actually relevant, first, because American did not plead or argue in the trial court that the Bank was estopped to deny liability, and, second, because the audit occurred after the date of the loan transaction (December 5, 1972), and thus had no bearing on the intention of the parties at the time the loan and pledge were made.

The evidence before the trial court established conclusively the Bank's right to apply American's account to the Prophecy debt. American was

bound by the acts of its president and secretary, and was not entitled to recover the savings account funds. Therefore, the judgment in favor of plaintiff was manifestly erroneous and is reversed.

Reversed.

STOUDER, P. J., and BARRY, J., concur.