The **CHASE MANHATTAN BANK**, as Collateral Agent,

v.

**IRIDIUM AFRICA CORPORATION; Iridium Canada, Inc.; Iridium China (Hong Kong) Ltd.; Iridium India Telecom Limited; Iridium Middle East Corporation; Iridium Sudamerica Corporation; Khrunichev State Research and Production Space Center; Korea Mobile Telecommunications Corporation; Lockheed Martin Cor-**poration; **Motorola, Inc.; Nippon Iridium (Bermuda) Limited; Pacific Electric Wire & Cable Co., Ltd.; Raytheon Company; Sprint Iridium, Inc.; STET–Societa Finanziaria Telefonica Per Azioni; Thai Satellite Telecommunications Co., Ltd.; and Vebacom Holdings, Inc., Defendants.**

No. Civ.A.00–564–RRM JJF.

United States District Court,
D. Delaware.

April 23, 2002.

Stephen E. Jenkins, Regina A. Iorii, Ashby & Geddes, Wilmington, Delaware, for plaintiff The Chase Manhattan Bank.

Samuel A. Nolen, Anne C. Foster, Catherine G. Dearlove, Richards, Layton & Finger, Wilmington, Delaware, for defendants, STET–Societa Finanziaria Telefonica per Azioni, Korea Mobile telecommunications Corporation.

Victor F. Battaglia, Biggs & Battaglia, Wilmington, Delaware, for defendants Sprint Iridium, Inc.

Richard K. Herrmann, Dale Dubê, Blank Rome Comisky & McCauley, LLP, Wilmington, Delaware, for defendant Motorola, Inc.

William J. Marsden, Jr., John T. Meli, Jr., Fish & Richardson, P.C., Wilmington, Delaware, for defendants Iridium Africa Corporation, Iridium Middle east Corporation, Krunichev State Research and Production Space Center.

David C. McBride, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for defendant Iridium Canada, Inc.

Elizabeth A. Brown, Morris, James, Hitchens & Williams, Wilmington, Delaware, for defendants Nippon Iridium (Bermuda) Limited, Verbacom Holdings Inc.

John S. Spadaro, Murphy, Spadaro & Landon, Wilmington, Delaware, for defendant Pacific Electric Wire & Cable Co., Ltd.

Barry M. Klayman, Wolf Block Schorr, Solis–Cohen, LLP, Wilmington, Delaware, for defendant Iridium China (Hong Kong) Ltd.

## MEMORANDUM AND ORDER

THYNGE, United States Magistrate Judge.

## I. Introduction

The plaintiff, The Chase Manhattan Bank ("Chase"), brought this action against various defendants alleged to be Members of Iridium LLC, a bankrupt Delaware limited liability company. Presently before the court are the parties' cross-motions for summary judgment. For the reasons stated below, the plaintiff's motion is DENIED and the defendants' motions are DENIED in part and GRANTED in part.

## II. Background

Chase's cause of action arises from a loan transaction between Chase[1] and Iridium Operating LLC ("Iridium Operating"). For a complete understanding of the relevant issues, a brief corporate history of Iridium is necessary. Iridium Inc. was incorporated in 1991 as a wholly-owned subsidiary of Motorola, Inc. Motorola spun off Iridium Inc., in 1993 to a group of investors, including many of the defendants in this case. In July 1996, Iridium Inc. converted into a Delaware limited liability company by merging with an entity called Iridium LLC. On December 8, 1997, Iridium LLC transferred all of its assets and liabilities to Iridium Operating to facilitate the financing of loans to support a new product venture, the Iridium System. The Iridium System was a global communications operation designed to allow customers to place and receive, *inter alia*, telephone calls from any location in the world.

When Iridium Inc. was spun off by Motorola, all of the investors entered into a Stock Purchase Agreement that addressed the legal responsibilities of the parties. Section 2(f) of the agreement required the stockholders to purchase additional interests in Iridium Inc., up to 25% of their initial investment, upon the proper demand of the Board of Directors. Upon the creation of Iridium LLC, the Stock Purchase Agreement was replaced by the LLC Agreement. Stock in Iridium Inc. was converted into "Class 1 Interests" and the investors became "Members" of the LLC. Members of the LLC with at least 5,250,-000 Class 1 Interests were directors of

---

[1]. The loan transaction was also held by Barclays Bank and involved several other financial institutions. Chase is acting in the suit as agent for the other lenders.

Iridium LLC. According to the parties, the LLC Agreement was intended to preserve the obligations of the Stock Purchase Agreement in most, if not all, respects. Section 2(f) of the Stock Purchase Agreement was carried into § 4.02 of the LLC Agreement, known as the Reserve Capital Call ("RCC") section. The central issues in this case revolve around § 4.02 and the RCC obligations of the Iridium LLC Members.

As originally drafted in July 1996, § 4.02 required Iridium LLC Members to purchase additional "Class 1 Interests" in the LLC if the Board of Directors of Iridium LLC made a proper demand.[2] The Class 1 Interests were priced at $1,000 and Annex D of the LLC Agreement set forth the number of Interests each Member was obligated to purchase: from 3,000 to 44,500 Interests.

In December 1997, Iridium Operating entered into agreements to secure a $1 billion credit facility to finance the Iridium System project. During negotiations for that loan in September and October of 1997, Chase sought security from Iridium Members by obtaining rights to their RCC obligations. At a Board of Directors and Members meeting held on October 15, 1997 in Rio de Janeiro, Brazil, both the Board and Members addressed changes to § 4.02 of the LLC Agreement to obtain the financing. At that meeting, the Board of Directors recommended that the Members approve certain changes to § 4.02. Under those changes, Members were bound to purchase Class 1 Interests, at a price of $13.33 per Interest, upon the demand of the Board of Directors or Chase,

as the collateral agent for those banks providing the credit facility. While the Board of Directors meeting was adjourned, the Members discussed the Board's recommendation in a "Special Meeting of Members." *D.I. 564 at 16.* Ultimately, the Members present at the meeting accepted the Board's recommendation to amend § 4.02 and the minutes reflected their approval. However, all of the Members did not attend the Special Meeting and thus did not vote on the amendments.[3] Following the meeting, draft minutes reflecting the decisions of the Board and Members were circulated to the Members. No Members commented on the draft minutes for the October 1997 meeting and those minutes were approved at a subsequent meeting.

In late 1998, Chase and Iridium Operating entered into new loan transactions to repay the 1997 indebtedness and continue to finance the Iridium System project. The plan consisted of $1.55 billion in financing for Iridium Operating in two separate agreements. First, Chase loaned $750 million to Iridium, guaranteed by Motorola. This loan is not at issue in this litigation. Second, Chase loaned an additional $800 million to Iridium Operating allegedly secured, in part, by the RCC. The loan agreement is known as the Senior Secured Credit Agreement. As part of the Senior Secured Credit Agreement, Iridium LLC entered into the "Parent Security Agreement," in which Iridium LLC assigned its right to the Reserve Capital Call obligations to Chase as collateral for the loans to Iridium Operating. The RCC obligations are valued, in total, at $243

---

**2.** For example, a demand made to provide additional financing necessary for the implementation of the Iridium System was proper.

**3.** Various defendants note that at least two Members, Raytheon Co. and Lockheed Martin Corp., did not attend the meetings in Rio de

Janeiro. Furthermore, representatives of two other Members, Korea Mobile and Khrunichev State Research and Production Space Center, were unable to attend the meeting of the Members due to security problems.

million. One of the key issues in the case is the validity of this assignment.

At a teleconference on November 25, 1998, the Board proposed that the Members adopt the financing plan.[4] Again, not all of the Members were involved in the teleconference, and thus were not "present" at the meeting.[5] The Members that participated in the meeting adopted the resolution, which stated that "it is the intent of the Members that § 4.02 of the LLC Agreement shall apply to the $800 million Secured Bank Facility in the same manner in which it has applied to the $1 billion interim Secured Bank Facility...." *D.I. 576 at A1844.* The Members also approved the addition of subsection (e) to § 4.02. This resolution, together with a copy of the LLC Agreement, with amendments until December 7, 1998, were included in a Secretary's Certificate furnished by Iridium LLC's Assistant Secretary to Chase as part of the Senior Secured Credit Agreement.

According to § 1.06 of the LLC Agreement, the presence of the majority of the interests entitled to vote on the pending action constituted a quorum. The action being voted upon became the "act of the Members" if a majority of the voting interests supported the action, unless the LLC agreement specified otherwise. In contrast it is undisputed that amendments to § 4.02 of the LLC Agreement required the consent of all Iridium LLC Members whose interests would be affected. In § 11.01(e) the Agreement states: "4.02 . . .

may be amended only with the consent of LLC and each party whose rights and obligations thereunder are directly affected by such amendment(s)...." *D.I. 566 at A409.*

Ultimately, the Iridium System was not profitable and Iridium experienced financial distress. Iridium Operating defaulted on the loans to Chase, and on August 12, 1999 Chase sent a demand letter to the Members of Iridium LLC invoking the RCC rights.[6] The next day, Iridium's creditors filed involuntary Chapter 11 bankruptcy petitions for both Iridium LLC and Iridium Operating.[7]

The parties have moved for summary judgment on several issues. The defendants argue that: (1) the assignment of the RCC obligations from Iridium LLC to Chase was invalid as a matter of law because the Members never unanimously approved that assignment; (2) the Bankruptcy Code prohibits the issuance of Class 1 Interests, thereby excusing the Members from purchasing those interests pursuant to the RCC; and (3) Chase's contract defenses, reformation arguments, and tort claims fail as a matter of law. Chase has also moved for summary judgment, arguing that: (1) the Members' consent to the assignment of the RCC obligations is established by the evidence; (2) if the evidence fails to show a Member's consent to the assignment, that consent is established by ratification, acquiescence, or estoppel;

4. The defendants allege that the meeting was invalid because the Board of Directors failed to comply with various notice requirements provided for in the LLC Agreement. Chase argues that the board complied with the notice requirements, or in the alternative, invalidating the actions at the meeting is an inappropriate remedy for notice deficiencies.

5. According to the defendants, no representatives from Lockheed Martin, Korea Mobile,

Thai Satellite, Vebacom, or Iridium Italia were present on the teleconference.

6. Iridium purchased a series of default waivers from Chase, before the demand was made.

7. In order to pursue this litigation, Chase obtained a waiver of the automatic stay from the bankruptcy court in June of 2000.

and (3) the defendants waived any and all defenses.

## III. Legal Standard

■■■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should not be granted if the dispute involves a material fact.[8] "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is a genuine issue of fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505 (citations omitted). Additionally, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an [essential element] ... on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of [that] ... party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. A moving party can meet its burden if the party "point[s] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. On the other hand, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 321, 106 S.Ct. 2548 (citing *Catrett v. Johns–Manville Sales Corp.,* 756 F.2d 181, 184 (D.C.Cir.1985)).

## IV. Discussion

### A. Validity of the Assignment

■■■ The defendants seek summary judgment on Chase's claim to the RCC obligations by arguing that Iridium LLC's assignment of those obligations to Chase was invalid. According to the defendants, the assignment was invalid because the Members did not give their unanimous consent to the changes made to § 4.02 of the LLC Agreement, as purportedly required by § 11.01(e) of the LLC Agreement.[9]

---

**8.** "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**9.** Concerning the 1998 meeting, Chase argues that because the action taken at that meeting was simply a resolution, unanimous written consent was unnecessary. It claims that because the relevant wording of § 4.02 was not changed at the meeting, the action taken can-

not be called an amendment. To the contrary, the defendants claim that § 4.02 was amended at both the October 1997 and the November 1998 meetings, without the consent of all the affected parties, as required by § 11.01(e). The classification of the actions taken at the 1998 meeting is irrelevant at this time, because the court has denied summary judgment on whether the actions taken at the 1997 constituted a valid assignment. Therefore, the court reserves ruling on whether the

The court finds that because all of the Iridium LLC Members were not present at the 1997 Board and Members meeting, unanimous consent to amend the RCC obligation was not given at that time. However, it is unclear from the facts presented whether consent may have been given sometime thereafter through the defendants' conduct. Section 11.01(e) of the LLC Agreement requires unanimous consent, but it does not specify the manner in which the consent must be given. What was necessary to fulfill the unanimous consent requirement and whether those requirements were satisfied are fact questions appropriate for resolution by the jury. Therefore, this court cannot find unanimous consent or the absence thereof as a matter of law.

*Secretary's Certificate*

Chase argues that it is entitled to summary judgment on its breach of contract claim because the loan agreements, together with the representations contained in the Secretary's Certificate provided pursuant to those agreements, establish the validity of the assignment of the RCC obligations and the defendants' resultant liability. In so arguing, Chase relies upon the presumptive accuracy of the Secretary's Certificate and the Secretary's (actually, the Assistant Secretary, Kevin Lavin) delegated authority from the Board of Directors to bind the Members. Chase relies on § 2.02 of the LLC Agreement, which states "The Members agree that all determinations, decisions and actions made or taken by the Board of Directors (or their designee(s)) shall be conclusively and absolutely binding upon LLC, the Members (but only in their capacity as such) and their respective successors, assigns and personal representatives." *D.I. 566 at 409.* According to Chase, the Board designated Kevin Lavin as the As-

sistant Secretary and his decision that § 4.02 of the LLC Agreement had been properly amended is binding on the Members pursuant to § 2.02. *See In re Drive-In Dev. Corp.*, 371 F.2d 215, 219 (7th Cir. 1966) (holding a corporation was estopped from arguing that a statement made by a corporate secretary was untrue, when that statement was within the authority of the secretary to make); *American Union Fin. Corp. v. University Nat'l Bank of Peoria*, 44 Ill.App.3d 566, 3 Ill.Dec. 248, 358 N.E.2d 646, 648 (1976) (corporate officer binds the corporation when acting within the scope of his or her authority).

In response, the defendants argue that Lavin's representations as Assistant Secretary of Iridium LLC can only be attributed to the LLC and not to its Members. Thus, the defendants distinguish those cases relied upon by Chase on the basis that the secretary's corporation was bound by the statements, not third party investors in the corporation.

The court agrees that the Secretary's Certificate does not, in and of itself, prove that the changes to § 4.02 were validly enacted and binding on the Members. First, the court notes that the Certificate itself states only that Lavin acts "on behalf of" Iridium LLC. The Certificate says nothing on its face that Lavin was also speaking on behalf of Iridium LLC's Members. Second, and perhaps more importantly, Chase overstates the authority provided to Lavin under § 2.02 of the LLC Agreement. While § 2.02 provides that the Board and its designees can act to bind the Members of the LLC, the invocation of that section in these circumstances strains credibility. Put simply, Chase's position is that because Lavin represented to Chase that he was presenting the validly amended LLC Agreement, the agreement must

changes in 1998 were amendments or resolutions.

have been validly enacted and that the Members are bound by that representation. Were this the case, Lavin could bind the Members to any change in the LLC Agreement, even one that controverts the expressed provisions of the Agreement, simply by stating so to a third party such as Chase. It is beyond cavil that no reasonable business person would afford such wide-ranging authority to the Board (or its designees) to alter unilaterally the terms of the LLC Agreement. Reasonably understood, § 2.02 accords the management of Iridium LLC authority to bind the LLC and the Members to obligations in the ordinary course of business. Proclaiming that the LLC Agreement was validly amended, when perhaps it was not, is not in the ordinary course of business because it would fundamentally after the prior agreement of the Members that changes to § 4.02 must be enacted by all affected parties under § 11.01(e).

Therefore, the court does not agree that Chase can rely on the Secretary's Certificate to establish the liability of the defendants. The court will deny Chase's summary judgment motion to the extent that such motion is based on reliance on the Secretary's Certificate to prove the validity of the assignment of the RCC obligations to Chase.

*Minutes*

■ Chase also seeks summary judgment by relying on the putative accuracy of the minutes of Iridium Board and Member meetings to establish that the RCC obligations were validly assigned to Chase. While Chase is correct that such minutes are evidence of the actions approved at such meetings, the existence of such minutes does not, by itself, establish that any changes to § 4.02 were validly enacted. Responding to a similar argument, the Delaware Court of Chancery has stated, that "[t]o support this argument it is necessary to accept the proposition that the mere approval of the minutes of a preceding meeting amounts to a ratification of the validity of everything which the minutes disclose to have been done. That is a proposition which is not acceptable." *In re Chelsea Exch. Corp.*, 159 A. 432, 435 (Del.Ch.1932). While the minutes are evidence of the fact that some of the Members consented to the assignment of the RCC, the defendants note that the minutes do not show the consent of those Members that failed to attend the meetings. Thus, whether those non-consenting Members later consented to the actions taken by the other Members at the meeting by failing to object to the minutes or by later ratifying the actions taken are questions the court is unable to resolve as a matter of law at this time.

*Ratification, Acquiescence, and Estoppel*

■ Chase seeks summary judgment on its breach of contract claim, and seeks to defeat the defendants' arguments that the RCC obligations were not properly assigned, by arguing that the Members of Iridium LLC are bound under the doctrines of ratification, acquiescence, and estoppel. According to Chase, regardless of whether the Members approved the assignment of the RCC to Chase in sufficient number, all of the Members ratified and acquiesced in the assignment by remaining silent and accepting the benefits of the loan. Further, Chase charges that because the Members led Chase to believe that the assignment was valid, they should be equitably estopped from challenging the validity of that assignment at this time.

The defendants argue that Chase cannot succeed on its summary judgment motion because the doctrines of acquiescence, ratification, and estoppel are inapplicable to the present facts. They charge that acqui-

escence and ratification can be used in defense of a claim as a shield, but not as a sword to prove a claim. In any event, the defendants allege that there are no facts in the record of this case that might establish such an acquiescence or ratification. Moreover, the defendants submit that Chase cannot establish estoppel because Chase had full access to all of the relevant information regarding the assignment, and therefore cannot be said to have relied on representations, if any, made by the defendants.

■ Acquiescence, ratification, and estoppel are closely related doctrines. Under Delaware law, "[a]cquiescence properly speaks of assent by words or conduct during the progress of a transaction, while ratification suggests an assent after the fact." *Frank v. Wilson & Co.*, 27 Del.Ch. 292, 32 A.2d 277, 283 (1943). Chase's reliance on acquiescence and ratification are, in effect, attempts to remedy the apparent lack of consent to the assignment of the RCC obligations for some of the Iridium LLC Members. In the absence of a more visible manifestation of that consent, such as a signed document, Chase seeks to establish that all Members did indeed consent by their action, and thereby acquiesced in and ratified the assignment of the RCC. Delaware law, however, typically treats acquiescence and ratification as defenses. That is, when a plaintiff challenges the actions of a defendant, the defendant may plead the plaintiff's acquiescence in that conduct as an absolute defense to liability. *See Norberg v. Security Storage Co. of Wash.*, Del.Ch. No. 12885, 2000 WL 1375868, *4 (Del.Ch. 2000) (describing the "equitable defense" of acquiescence); *Frank v. Wilson & Co.*, 24 Del.Ch. 237, 9 A.2d 82, 86 (Del.Ch. 1939). Therefore, the defendants argue the doctrines are inapplicable because they can only be used as a shield and not as a

sword to create liability. The court disagrees. In this case, Chase wishes to use acquiescence and ratification in a broader sense to establish that the defendants' assent to the assignment may be inferred from their conduct consistent with the validity of that assignment. Put differently, Chase does not seek to use acquiescence to prove the defendants' liability, but to oppose the "lack of consent" defense interposed by the defendants. Correctly understood, Chase's invocation of acquiescence and ratification is proper.

■ The court concludes, however, that the application of those doctrines to the present facts creates questions of fact that cannot be resolved on summary judgment. The defendants argue that Chase can show only that those defendants who failed to consent to the RCC assignment at the October 1997 and November 1998 meetings made no subsequent statements approving or disapproving of the transaction and that this "silence" is insufficient to prove acquiescence or ratification. The court disagrees. While ratification "implies a voluntary and positive act . . . inaction alone may amount to a positive act." *Frank v. Wilson & Co.*, 27 Del.Ch. 292, 32 A.2d 277, 283 (1943). The defendants' inaction, however, is an insufficient factual basis to grant summary judgment in favor of Chase. Rather, to establish ratification through the action or silence of the defendants after the meetings, Chase must show that "the conduct of [the defendants], subsequent to the transaction objected to, is such as reasonably to warrant the conclusion that [they have] accepted or adopted it." *Id.*

Nor has Chase shown that the court must equitably estop the defendants from denying the validity of the assignment of the RCC obligations. The defendants have pointed out that estoppel requires Chase to have reasonably relied to its det-

riment upon the representations of the defendants that the RCC obligations were validly assigned. *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del.1990). They argue, Korea Mobile, which allegedly never consented to the RCC assignment, also never made any representation to Chase on which equitable estoppel might be found. Therefore, because only Iridium and the consenting Members would have made representations, the defendants argue that Chase could not have relied on representations from all the Members, as required to show unanimous consent. Even if it were true, however, that all the representation on which Chase relied were made only by Iridium and the consenting Members, estoppel can be applied in situations in which an investor or stockholder, "consents or acquiesces in the acts of directors or other corporate officers." *Id.* at 1136–37. Thus, estoppel may still be applicable, through acquiescence and ratification, even though not all of the Members made express statements on which Chase could have relied.

■ Although estoppel may be applicable, the court finds it cannot grant summary judgment on that basis because application of the doctrine presents questions of fact not capable of resolution on summary judgment. Under Delaware law, estoppel will not usually be applied in favor of a party who had full knowledge of the relevant facts but nonetheless chose to rely on the representation in question. *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 457 (Del.Supr.1982) (holding a person's reliance on a representation cannot be reasonable when that person knew all facts relevant to the inquiry); *Great Am. Credit Corp. v. Wilmington Housing Auth.*, 680 F.Supp. 131, 137–38 (D.Del.1988). In this case, the defendants allege that Chase had the means to know unanimous consent was required for a val-

id assignment and therefore, Chase should not have relied on the defendants' representations. To the contrary, Chase notes that it relied on Iridium LLC and the Secretary's Certificate to establish the validity of the assignment. Because the defendants have shown a disputed issue of material fact, the court concludes that Chase is not entitled to a judgment equitably estopping the defendants from denying the validity of the RCC assignment.

### Implied Contract

■ Chase also argues that even if the RCC obligations were not validly assigned, it has separate contractual bases for enforcing those obligations. It claims that there was an implied-in-fact contract because the parties "had a meeting of the minds" concerning the RCC obligation. To support its argument, Chase maintains that the evidence reflects, *inter alia*, that most of the defendants attended the board meetings discussing the RCC, and many signed public filings recognizing the assignment to Chase. Chase argues, and the court agrees, that a reasonable jury could find in its favor because the filings may support the conclusion that there was an implied-in-fact contract. Thus, summary judgment for the defendants on this claim is denied.

### B. Unenforceability of the RCC

Section 365(a) of the Bankruptcy Code provides that the bankruptcy trustee or a debtor-in-possession may assume any executory contract upon the approval of the court. 11 U.S.C. § 365(a). However, pursuant to § 365(c)(2) "[T]he trustee may not assume or assign any executory contract ... of the debtor ... if ... such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." *Id.*

The defendants argue that the LLC Agreement is an executory contract falling under § 365(c) of the Bankruptcy Code. According to the defendants, cases interpreting the meaning of executory contract have held that they are contracts in which both the debtor and the other party have remaining performance obligations. *See In re Columbia Gas System, Inc.,* 50 F.3d 233, 239 (3d Cir.1995); In re Access Beyond Techs., 237 B.R. 32, 43 (Bankr.D.Del. 1999). Defendants claim that because Iridium LLC has the obligation under § 4.02 to issue Class 1 Interests, and the Members have the obligation to purchase those interests, the LLC Agreement is an executory contract with performance remaining. Further, they argue that the LLC Agreement is a contract to "make a loan ... to or for the benefit of the debtor, or to issue a security of the debtor" because the payment of money in return for more Class 1 Interests was a key component of the RCC obligation.[10] As a result, they maintain, the LLC Agreement falls under § 365(c). Additionally, the defendants assert that because Iridium is in bankruptcy and § 365(c) is applicable, Iridium LLC cannot, as a matter of law, assume the LLC Agreement and fulfill its commitment to issue the Class 1 Interests. Defendants contend that Iridium's non-performance of this integral contractual obligation constitutes a material breach excusing the defendants from the responsibility to pay for those interests.[11] Thus, the defendants seek summary judgment on the plaintiffs' claims.

In response to defendants' arguments that their RCC obligations are excused, Chase presents several arguments that § 365 does not necessarily prevent Iridium LLC from issuing equity interests.[12] One, Chase argues that because it has no obligations to the Members, the LLC Agreement is not executory as between Chase and the Members. Two, Chase contends that Iridium LLC's issuance of Class 1 Interests is not governed by § 365(c) because such interests are not a "security" of the debtor or a "financial accommodation." Three, Chase submits that because the Class 1 Interests are worthless following Iridium's bankruptcy, Iridium LLC's failure to issue those interests cannot be a material breach and therefore, the LLC Agreement cannot be an executory contract governed by § 365 under the Third or Second Circuit tests.[13] *See Sharon*

10. The defendants note that "financial accommodation" is not defined in the Bankruptcy Code and that "security" is given a broad definition under the Bankruptcy Code. 11 U.S.C. § 101(49).

11. This theory also forms the basis of defendants' contractual defenses including failure of consideration, impracticability, and impossibility.

12. Chase also argues that 6 Del.C. § 18–502(b) provides it with a separate recovery basis. It claims the statute allows "lenders who extend credit in reliance on capital call obligations [to] enforce those obligations directly, even absent a contract with the obligor." *D.I. 607 at 20.* In response, defendants claim that § 18–502 "only applies where there has been a 'compromise' of a contribution requirement between the LLC and its Members," and there has been no such compromise in this case. *D.I. 628 at 15.* Chase has not fully briefed this theory and none of the parties have cited any applicable case law. Thus, the court declines to rule on this argument at this time.

13. The Third Circuit states that a contract is executory if "the obligations of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39 (3d Cir.1989). The Second Circuit test employs a "some performance due" standard. *Eastern Airlines Inc. v. The Ins. Co. of the State of Pennsylvania (In re Ionosphere Clubs, Inc.),* 85 F.3d 992, 998–99 (2d Cir.1996). The defendants

*Steel Corp. v. National Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39 (3d Cir.1989); *Eastern Air Lines Inc. v. The Ins. Co. of the State of Pennsylvania (In re Ionosphere Clubs, Inc.),* 85 F.3d 992, 998–99 (2d Cir. 1996). Finally, Chase notes that the defendants, as Board Members of Iridium LLC, had the right to issue such interests, but declined to request permission to do so from the Bankruptcy Court. Therefore, Chase maintains, the defendants are estopped from arguing a failure of consideration because they are responsible for the failure.

Chase's first argument, that the LLC Agreement is not executory between itself and the Members, is unpersuasive. Chase is not a party to the LLC Agreement, even though certain provisions of the LLC Agreement grant Chase rights as if it were. The contractual obligation to purchase Class 1 Interests exists between Iridium LLC and its Members. Chase is an assignee of the Iridium LLC's rights to collect funds in return for those interests. While Chase may find it convenient to recast the LLC Agreement as only creating obligations between Chase and the Members, the participation of Iridium LLC is indispensable to the operation of § 4.02. Thus this argument of Chase fails as a matter of law.[14]

 The court must also reject Chase's argument that the Class 1 Interests Iridium LLC is required to sell are not a "security of the debtor" and Chase's argument that the LLC Agreement is not a contract for "financial accommodation." "Security" is expansively defined in the Bankruptcy Code as including items such as "stock," "certificate of interest or participation in a profit-sharing agreement," and the "interest of a limited partner in a limited partnership." 11 U.S.C. § 101(49). Interests in a limited liability company are analogous to such typical types of "security." *See In re Teligent, Inc.,* 268 B.R. 723, 733–38 (Bankr.S.D.N.Y.2001) ("a contract 'to issue a security of the debtor,' as used in § 365(c)(2), refers to a pre-petition agreement obligating the non-debtor to advance new cash or credit in exchange for the debtor's note (a debt security) or its stock (an equity security)"). Moreover, § 4.02 was crafted to provide an influx of capital for the LLC should it become necessary. Thus, it can be said to be a contract for the financial accommodation of Iridium LLC. The assignment of the RCC to Chase did not change the nature of the provision—it simply converted the section from requiring a direct financial accommodation to permitting Iridium to use the debt markets for further financing. Thus, the LLC Agreement does create executory commitments within the purview of § 365(c)(2).

 Likewise, Chase's argument that the issuance of Class 1 Interests is within the power of the Members as Directors of Iridium LLC is unpersuasive. Taking Chase's argument to be true that it was within the proper authority of the Members, through their representatives to the Board of Directors, to issue the Class 1 Interests, the Bankruptcy Court would still have to reject such a transaction because the debtor-in-possession cannot assume a contract governed by § 365(c),

---

presumably cite Second Circuit precedent because the Iridium companies have filed for bankruptcy protection in New York. Because the parties have briefed neither the differences between the two tests nor which law should govern, the court will assume it is governed by Third Circuit precedent.

14. Although this argument fails as a matter of law, whether the contract is executory remains as open issue. *See infra.* pp 134–135.

even when all parties to the contract consent. *See Transamerica Commercial Fin. Corp. v. Citibank N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1093–94 (9th Cir.1991) (holding that the plain meaning of § 365(c) bars the assumption of contracts for financial accommodation even where the parties consent to that assumption). When both the lender and the debtor consent to the assumption of a pre-petition financial accommodation, such assumption is still barred by the Bankruptcy Code because "[t]he assumption of financial accommodation contracts may have considerable impact on creditors who are not parties to the contract since assumption may entitle the non-debtor party to a distribution of estate assets on account of any pre-petition default, and to a priority claim on account of any post-petition default." *Id.* at 1094. Thus, Chase's argument that the failure to issue Class 1 Interests rests in the hands of the Members themselves is not persuasive.

■ Finally, the court must address Chase's argument that because the Class 1 Interests are worthless, Iridium LLC's failure to issue the interests cannot be a material breach and, therefore, the LLC Agreement cannot be executory. As noted previously, the Third Circuit has held that for a contract to be executory and within the purview of § 365, the unperformed obligations of both parties must be such "that the failure to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp.*, 872 F.2d at 39. It, therefore,

follows that if Iridium LLC's unperformed obligation to issue Class 1 Interests is not a material breach, it does not excuse the Members' obligation to make the RCC payments to Chase. *In re Columbia Gas Sys. Inc.*, 50 F.3d at 239–40. While Chase submits that the Class 1 Interests are worthless because Iridium LLC is in bankruptcy and saddled with enormous debt, it has not submitted more than its own assertion to evidence this purported fact. Thus, the court believes that value of the Class 1 Interests to be issued by Iridium LLC pursuant to § 4.02 of the LLC Agreement presents a question of fact not capable of resolution on summary judgment. Because it may be the case that the Class 1 Interests are worthless,[15] thereby possibly making the failure to issue them not a material breach and making the LLC Agreement non-executory, the court cannot grant summary judgment in favor of the defendants on this claim.[16]

Therefore, the court will deny the defendants' request for summary judgment based on § 365(c)(2) of the Bankruptcy Code because the value of the Class 1 interests has not been established, thus, presenting a material issue of fact as to whether Iridium LLC's non-issuance of the interests is a material breach. Because summary judgment is not appropriate on the question of material breach, this court cannot hold as a matter of law that the alleged contract between Chase and the Members was executory. As a result, whether § 365(c)(2) is applicable to the present facts remains an open issue.

---

**15.** Alternatively, at least one defendant argues that § 365(c) creates a condition precedent that the debtor is solvent when performance of the obligation is due. It has not been shown, however, where in § 4.02 the parties evidenced their intent to import the provisions of § 365(c) into a condition precedent. Thus, the court concludes that there is no evidentia-

ry support in the contract for such an express condition precedent.

**16.** The defendants have raised the defenses of lack of consideration, impossibility and frustration of purpose. Since each of these defenses would require fact finding by the jury, summary judgment in favor of the defendants is likewise inappropriate.

However, because Chase's other arguments regarding the applicability of § 365(c)(2) are unpersuasive and fail as a matter of law, remaining is whether Iridium LLC's non-issuance of the Class 1 interests constitutes a material breach.

## C. Waiver

■ Chase argues that it is entitled to summary judgment in its favor on its breach of contract claim because each of the Members waived any and all of its defenses by agreeing to the waiver provisions contained in § 4.02 of the LLC Agreement. Because the waiver provisions of § 4.02 were added to that section during the October 1997 Board and Members meeting, the waivers are only applicable in the event that § 4.02 is found to have been validly enacted. Although the court has found that neither party is entitled to summary judgment because questions of material fact remain regarding the validity of the changes made to § 4.02, the court will nonetheless address the purported waiver to further the expedient resolution of such issues prior to trial.

In relevant part, § 4.02 states that:

Each Member named on Annex D hereto confirms and agrees that its obligation to make payments pursuant to the Reserve Capital Call is absolute and unconditional under any and all circumstances and each such Member hereby waives in favor of the Secured Parties any defense it may have or acquire with respect to its obligations under the Reserve Capital Call.

Chase maintains that if § 4.02 was validly enacted, the waiver it contains extends to any and all defenses the Members might present. The defendants present two arguments in response. First, they argue that the waiver cannot apply to their defense that because Iridium LLC is bankrupt, it cannot issue Class 1 Interests pursuant to § 365(c)(2) of the Bankruptcy Code, and therefore the Members have no obligation to pay Chase the amount of the RCC obligations. Second, the defendants argue that the waiver of defenses cannot reasonably be construed to apply to Iridium's failure to issue the Class 1 Interests because that was the only obligation to which Iridium LLC is bound.

■ The defendants' argument that their agreement to § 4.02 of the LLC Agreement, which the court assumes for purposes of this discussion, does not waive the protections of the Bankruptcy Code, including § 365(c)(2), is well-founded. Presuming § 365(c)(2) applies to the LLC Agreement, parties to such an agreement cannot waive the prohibition on the assumption of executory contracts covered by that provision. *See Transamerica Commercial Finance Corporation v. Citibank, N.A. (In re Sun Runner Marine Inc.)*, 945 F.2d 1089 (9th Cir.1991); *In re Cardinal Indus., Inc.*, 146 B.R. 720, 732 (Bankr.S.D.Ohio 1992) (pre-petition agreement to make post-petition financing available to the debtor cannot act as a waiver of the protections of § 365(c)(2)). Thus, the court concludes that the waiver contained in § 4.02 of the LLC Agreement does not apply to defenses premised on the inability of Iridium LLC to issue Class 1 Interests.

To the extent that the defendants seek to rely on defenses other than those based on the non-waivable provisions of the Bankruptcy Code, the court must address the applicability of § 4.02's waiver provisions. The waiver applies, on its face, to "any defense [the Member] may have or acquire with respect to its obligations under the Reserve Capital Call." The defendants argue that this language does not include Iridium's failure to issue the Class 1 Interests because the issuance of those interests is expressly required by the LLC Agreement and are integral to the quid

pro quo of the RCC obligations. According to the defendants, § 11.03 of the LLC Agreement, which governs the remedies available for a Member's failure to pay its RCC obligations, makes clear that the Members' obligations under § 4.02 are "to pay any of the amounts required to be paid pursuant to Section 4.02 for *the purchase of Interests.*" (emphasis added). Therefore, § 4.02's waiver provisions do not extend to their defense that their RCC payments are consideration for the purchase of Class 1 Interests.

The court concludes that the defendants have shown an ambiguity to exist in the waiver provisions of § 4.02. While the waiver provisions are undeniably broad in scope, the defendants have presented at least a colorable argument that they do not extend to Iridium LLC's commitment, made expressly in the LLC Agreement, to grant Class 1 Interests in return for the RCC payments. Thus, the court is unable to resolve on summary judgment whether those waiver provisions apply to the defendants' arguments based on Iridium LLC's failure to issue Class 1 Interests.

### D. Chase's Tort Claims

■ In addition to the contract claims, Chase has presented claims alleging that the defendants are liable under the tort theories of fraud and negligent misrepresentation.[17] Chase argues that even if the court finds the assignment of the RCC obligations invalid, its tort claims

survive. Although the parties brought cross-summary judgment motions on Chase's breach of contract claim, only the defendants seek summary judgment on Chase's tort claims.

■ To prove a claim of fraud under New York law [18] a plaintiff must show "a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Clarke v. Wallace Oil Co.*, 284 A.D.2d 492, 727 N.Y.S.2d 139, 140 (N.Y.App.Div.2001).

■ To show negligent misrepresentation the plaintiff must prove: "(1) carelessness in imparting words; (2) upon which others were expected to rely; (3) upon which they did justifiably rely; (4) to their detriment; and (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound by some relation or duty of care." *Fromer and the Four Daughters Trust v. Yogel*, 50 F.Supp.2d 227, 243 (S.D.N.Y.1999). Additionally, the plaintiff must show that the defendant has a duty to disclose material information. *Abbate v. Abbate*, 82 A.D.2d 368, 441 N.Y.S.2d 506 (N.Y.App.Div.1981). The duty arises: "(1) when one party makes a partial or incomplete statement that requires clarification; (2) when the parties

17. Although not expressly discussed, it appears as though Chase is also raising fraudulent concealment arguments. In addition to showing the elements of fraud, in order to prove a claim of fraudulent concealment, a plaintiff must demonstrate that the defendant had a duty to disclose concealed information. *Centre–Point Merchant Bank Ltd. v. American Express Bank Ltd.*, No. 95 Civ. 5000, 2000 WL 1772874 (S.D.N.Y. Nov.30, 2000). The elements of fraud and negligent misrepresentation are essentially the same except that negli-

gent misrepresentation requires an innocent false or misleading statement. Therefore, there is significant overlap in the elements necessary to prove fraud, fraudulent concealment and negligent misrepresentation. Consequently, the court evaluates these causes of action concurrently.

18. The parties have agreed that pursuant to Delaware conflict of law principles, New York law applies to Chase's tort claims.

are in a fiduciary or confidential relationship; or (3) 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.' " *All American Adjusters, Inc. v. Acceleration Nat'l Ins. Co.*, No. 96 CIV. 9344(MBM), 1997 WL 732445 (1997).

### Material Misrepresentation

■ In response to the defendants' motions for summary judgment, Chase asserts that there are several issues of material fact with respect to its fraud and negligent misrepresentation claims.[19] First, to show that the defendants made a material misrepresentation, Chase again points to the representations of the Assistant Secretary Lavin. It argues that Lavin's statements should be attributed to the defendants because they authorized the Board to make decisions relating to financing, and the Board in turn appointed Lavin. In response, the defendants maintain that it was Iridium LLC, and not the Members, which made representations to Chase. As previously discussed, Chase is not entitled to rely on the Secretary's Certificate to prove the validity of the assignment. Chase's reliance on Lavin's statements to support its fraud claims is similarly misplaced. Lavin's statements may be attributed to the LLC only, and not to the Members individually. Thus, because these statements do not constitute a misrepresentation by the Members, they cannot form the basis of a fraudulent misrepresentation claim.

The only other misrepresentation alleged by Chase involves 1998 and 1999 public filings of Iridium LLC. Chase argues that because twelve of the defendants sponsored the public filings which indicated that the RCC had been validly pledged to Chase, there is an issue of fact as to

fraud. However, Chase fails to present any facts indicating that it relied on those statements when making the loan. To the contrary, the evidence suggests that Chase could not have relied on the filings, because the loan agreements were made before the filings. While this evidence may be relevant to the defendants' approval of the assignment of the RCC, it is not sufficient to support a misrepresentation claim.

Thus, having found no evidence that Chase relied on any misrepresentations by the Members of Iridium LLC, the court must grant summary judgment in favor of defendants on their fraudulent misrepresentation claims.

### Duty to Speak

■ Chase also argues that defendants had a "duty to speak." It claims that because the defendants knew that Lavin was negotiating with and representing to Chase that the RCC had been properly pledged, the Members had a duty to disclose those misrepresentations and by failing to do so, committed a material omission. To support its arguments, Chase attempts to prove the defendants' knowledge of those representations by alleging that the financing was public record, and that the Members received notices, minutes of Board meetings, and copies of the 1998 resolutions stating that amending § 4.02 was necessary to secure financing. The defendants respond that even if all defendants were aware that the assignment of the RCC was faulty, there was no duty to disclose the information to Chase because: (1) none of the defendants made an incomplete statement to Chase; (2) there was no fiduciary relationship or special relationship between Chase and the defendants; and (3) the information concerning the assignment was available to Chase.

---

**19.** The parties do not dispute the materiality of the RCC representations.

Chase points to the Restatement of Torts to show that the defendants had a duty to Chase.[20] The section states:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated ... facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of the facts.

Restatement (Second) of Torts § 551(2)(e).

Defendants argue that the section is not applicable because it only applies to parties who enter into a business transaction. They maintain that Chase entered into transactions with Iridium LLC and Iridium Operating, but not with the Members of Iridium.

■■■ As a general rule under New York law, banking relationships are not special relationships which invoke a duty to disclose. *Banque Arabe Et Int'l D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146 (2d Cir.1995); *Centre–Point Merchant Bank Ltd. v. American Express Bank, Ltd.*, No. 95 Civ. 5000, 2000 WL 1772874 (S.D.N.Y. Nov.30, 2000). This is especially the case when sophisticated parties enter into an arms-length transactions. *Id.* In such cases, "no extra contractual duty of disclosure exists. This same principle applies to loan participation agreements in which there is deemed to be no

fiduciary relationship unless expressly and unequivocally created by contract."

Chase, the non-movant and the party that bears the burden on this issue at trial, has presented no facts indicating the defendants had a duty to disclose under New York law. Instead, it solely points to the Restatement, which on its face applies to parties involved in a business transaction. Here, the record is clear that the *Members* did not enter into any agreements or transactions with Chase; ·thus, the Restatement is inapplicable to the present scenario. Therefore, Chase must bring forth facts showing one of the following: (1) the defendants made incomplete statements to Chase which should have been supplemented, (2) there was a special relationship between Chase and the defendants, or (3) the defendants had knowledge of facts not readily ascertainable to Chase.

■■■ The thrust of the parties' arguments centers on the special relationship factor. As stated above, New York courts have held that banking relationships between sophisticated parties are not special relationships. The present case involves sophisticated parties involved in a banking transaction; thus, there is no special relationship present.[21] Additionally, Chase has shown no evidence of incomplete statements or that the defendants had knowledge of facts solely within their purview. As a result, this court finds that no reasonable jury could find for Chase on this issue: summary judgment in favor of the

---

**20.** Chase argues, and for the purposes of this memorandum, the court agrees that the Restatement has been adopted by New York courts. *See D.I. 607 at 44.*

**21.** If one were to carry the defendants' arguments and the court's holding on the inapplicability of the Restatement of Torts to its logical end, it is questionable whether the

defendants even had a banking relationship with Chase because it was Iridium LLC and not the Members who made the agreements regarding financing. However, because Chase is the non-movant on this issue, the court will assume that the Members were in a banking relationship with Chase.

defendants on Chase's negligent misrepresentation claims is appropriate.[22]

## E. Reformation of the LLC Agreement

■ Chase argues that if the court finds the RCC obligations were not validly assigned, it is entitled to reformation of the LLC Agreement because the agreement does not reflect the parties' intent. First, Chase claims that if defendants are successful in their consent defense, Chase and the parties who believed the assignment was valid shared in a mutual mistake of fact. Thus, the LLC Agreement should be reformed to reflect the true intent of the parties. As to those parties who did not consent to the amendment, Chase maintains that the contract should be reformed because the parties knew that the RCC assignment was invalid, but remained silent. Finally, Chase argues that reformation is appropriate because the evidence shows that the defendants intended to be bound.

In response, defendants' primary argument is that Chase has no standing to request reformation of the LLC Agreement because it was not a party to the agreement. Again, defendants argue that Chase was involved in transactions with Iridium LLC and not the Members of Iridium. Thus, because the Members were not a party to any agreements with Chase, reformation is inappropriate. Further, the defendants argue that if the court finds that Chase was a third part beneficiary to the LLC Agreement, Chase must "take the contract as [they] find [ ] it" D.I.

623 (alteration in original). Defendants argue that the LLC Agreement includes the specific standards governing the amendment in § 11.01(e). Hence, any reformation of the contract concerning the RCC obligation is an amendment to the original agreement and must be dealt with through § 11.01(e). As a result, the defendants maintain that Chase must show that the parties intended to amend § 11.01, because Chase is requesting an amendment of the original LLC agreement. Defendants assert that there is no evidence indicating that the Members intended to amend § 11.01, and therefore, reformation is not appropriate.

■ Under Delaware law, reformation is appropriate when "the contract does not represent the parties' 'intent because of fraud, mutual mistake, or in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence.'" *Emmert v. Prade*, 711 A.2d 1217, 1219 (Del. Ch.1997) (citing *James River–Pennington Inc. v. CRSS Capital, Inc.*, C.A. No. 13870, 1995 WL 106554, *7 (Del.Ch. March 6, 1995)). To prove that reformation is an appropriate remedy, the plaintiff must show that there was a valid contract between the parties that did not reflect the parties' actual intent. *H. Prang Trucking Co., Inc. v. Local Union No. 469*, 613 F.2d 1235 (3d Cir.1980) (generally discussing the equitable remedies of reformation and rescission). In some narrow circumstances a third-party beneficiary may seek rescission of a contract although it was not a principal party to the contract.[23] How-

---

22. Similarly, because fraudulent concealment also requires a special relationship, summary judgment would be appropriate on a claim for fraudulent concealment as well.

23. One case, *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, No. 16425, 1999 WL 33236239 (Del.Ch. Nov.4, 1999), which is argued by both sides in support of their positions, al-

lowed a plaintiff's reformation claim to stand where one of the litigants was not a contracting party or a third party beneficiary of the contract. In that case the third party, Apollo Management, was the parent company to MTI Acquisition Corp., one of the contracting parties. Apollo had created MTI Acquisition Corp for the express purpose of completing a

ever, a third-party beneficiary is not entitled to rights greater than those of the contracting parties.

Assuming Chase is a third party beneficiary to the LLC Agreement, Chase may have the right to seek reformation of the contract. However, for Chase to succeed in its claim it must prove that the LLC Agreement does not reflect the parties' intent with respect to amending the agreement. In order for Chase to receive the remedy it seeks, i.e., the validity of the assignment of the RCC, it must show that the parties did not intend to require the unanimous consent of all affected parties, as provided for in § 11.01(e). Further, because § 11.01 governs amendments to the LLC Agreement, the relevant intent inquiry is not whether the parties intended the RCC to be assigned to Chase, but whether the parties intended to eliminate the unanimous consent requirement of § 11.01 because the former could not be completed without the latter. Chase has not presented sufficient evidence on this issue to warrant a jury finding in its favor. Thus, the court grants summary judgment for the defendants on Chase's reformation claim.

Consistent with this opinion the court finds the following:

1) There is a genuine issue of material fact as to the validity of the assignment of the RCC obligation. However, Chase is not entitled to rely on the representations of Assistant Secretary Lavin to prove that the Members unanimously consented to amendments to § 4.02. Additionally,

Chase may not rely solely on the minutes of the board meetings to show unanimous consent, but may use the minutes as evidence at trial.

2) There is a genuine issue of material fact as to the applicability of Chase's ratification, acquiescence, and estoppel claims.

3) There is a genuine issue of material fact as to whether an implied-in-fact contract existed between the parties.

4) There is a genuine issue of material fact as to whether § 365(c)(2) is applicable. However, the following arguments raised by Chase fail as a matter of law: (a) that the Class 1 interests at issue are not a "security" of the debtor or a "financial accommodation" under the bankruptcy code, (b) that defendants are estopped from arguing a failure of consideration because they are responsible for that failure, and (c) that the contract is not "executory" between Chase and the Members because Chase has no obligations to the Members. For clarification, Chase's argument that the LLC Agreement is not executory because the Class 1 interests are presently worthless, raises a material fact issue. Therefore, the only issue remaining regarding the applicability of § 365(c)(2), is whether the failure to issue the Class 1 Interests would be a material breach, thereby making the contract non-executory.

5) In the event that the assignment of the LLC Agreement is deemed valid, there is a genuine issue of material fact as to

merger with the plaintiff in the suit. However, Apollo was not a party to the relevant agreement. The court evaluated the case through the joinder provisions of the Delaware Court of Chancery Rules. Ultimately, the court denied the defendants motion to dismiss Apollo and declined to decide whether the joinder standard was broad or narrow. As a result, the case is not on point and does

not compel the result requested by Chase. Even if the case dealt more directly with reformation, it would still be distinguishable from the present facts because it concerned a parent company with direct control over its subsidiary, while this matter involves the relationship between a limited liability company and its Members, two entirely separate situations.

whether the defendants have waived their defenses.

6) There are no genuine issues of material fact as to Chase's fraud, fraudulent concealment or negligent misrepresentations claims. Thus, summary judgement for the defendants on these claims is granted.

7) There are no genuine issues of material fact as to Chase's reformation claims. Therefore, summary judgement for the defendants on Chase's reformation claims is granted.

### V. Conclusion/Order

For the reasons stated herein, IT IS ORDERED that:

1) Chase's motion for summary judgment (D.I.570) is **DENIED.**

2) Defendants' motions for summary judgment on the validity of the assignment (550, 563) are **DENIED.**

3) Defendants' motions for summary judgment as to the unenforceability of the RCC obligation (D.I.546, 550, 563) are **DENIED.**

4) Defendants' motions on Chase's tort and contract reformation claims (D.I.546, 550, 563) are **GRANTED.**